[No. A062587. First Dist., Div. Four. Jan. 13, 1994.]

DAVID B., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF
SOCIAL SERVICES et al., Real Parties in Interest.

## COUNSEL

Jeff Brown, Public Defender, Peter G. Keane, Chief Deputy Public Defender, Grace Lidia Suarez and Franz Fuetsch, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Louise H. Renne, City Attorney, D. Charlotte Siggins and Amy S. Ackerman, Deputy City Attorneys, Carol A. Koenig and Ruth M. Edelstein for Real Parties in Interest.

## OPINION

REARDON, J.—Petitioner David B. seeks a writ to require respondent court to set aside a judgment terminating his parental rights on the ground that he lacked notice. As explained below, we hold that a juvenile court in dependency proceedings has no power to vacate orders on the ground of lack of personal jurisdiction after an order terminating parental rights has become final in that court and we uphold as constitutional the statutory scheme which imposes this limitation on the trial court.

### FACTS—PROCEDURAL BACKGROUND

On May 24, 1991, the department of social services (DSS) filed a dependency petition on behalf of the minor, M.B., born on April 27, 1991. In support of the petition, the social worker reported that the mother, Michelle, had dropped the minor off at a sitter's on May 21, 1991, and did not return. The sitter called the police the next day and the minor was taken to a shelter. When the social worker talked to the sitter on May 23, the mother was there and the social worker set up an appointment for the next day to discuss the situation. The mother did not keep the appointment and the social worker could not locate her. The worker also reported that he had no information as to the whereabouts of David B., the father.

On July 15, 1991, an employee of DSS filed a "Declaration of Search For Parents" in which she detailed the efforts made to locate petitioner. Among the notations is one that states a telephone call was made to the family support bureau of the district attorney's office. A dispositional court report

dated July 15, 1991, stated that the mother had apparently abandoned the minor and left for Seattle. Regarding petitioner, the report stated: "As to the father, we know absolutely nothing about him except his name and date of birth. Our search efforts have failed to find him." On July 16, 1991, respondent court found that reasonable efforts had been made to locate the father.

In a six-month review report, DSS stated that there had been no contact with the mother and that her whereabouts and those of petitioner were unknown. In a "Declaration of Efforts," executed on November 13, 1991, no specific mention of petitioner is made but there is an entry that telephone calls had been made to the jails, prisons and probation departments. The matter was continued to July 16, 1992, for a 12-month review.

On October 22, 1991, prior to the six-month review report, the San Francisco District Attorney filed a pleading in San Francisco Superior Court seeking to recover from petitioner sums expended by the city for the foster care of M.B. The pleading sets forth petitioner's address as "4557 8th NE #10[,] Seattle, WA 98105" and his employer as the United States Marine Corps. Petitioner's date of birth and social security number were also listed.

On June 25, 1992, DSS filed a 12-month review report stating that the current caretakers of the child wished to adopt her. A "Declaration of Efforts" recited calls to locate the parents through jails, prisons and the telephone directory. On July 16, 1992, the court found that reasonable efforts had been made to locate the parents and set the matter for an implementation hearing pursuant to Welfare and Institutions Code section 366.26.[1] On July 22, 1992, the court ordered publication of notice to the parents in the Independent, a San Francisco newspaper. Proof of such notice was filed on August 26, 1992.

On November 16, 1992, DSS filed a social assessment for the section 366.26 hearing. DSS for the first time reported that the minor's birth certificate stated that the father was in the United States Marines and that an attempt was made to contact petitioner through the Red Cross on August 15, 1992, but no contact had been made. On November 16, 1992, the court terminated petitioner's parental rights. The termination order was filed on December 3, 1992.

Sometime prior to June 1993, petitioner contacted respondent court and the court appointed the public defender on June 1, 1993, to represent

---

[1]All statutory references herein are to the Welfare and Institutions Code unless otherwise indicated.

petitioner. Petitioner filed an application for relief from default pursuant to Code of Civil Procedure section 473.5. Petitioner's declaration in support of the motion stated the following:

Petitioner lived with and had sexual relations with Michelle from May until August 1990. He was sent to the Persian Gulf as a combat soldier and returned at the end of April 1991. He was contacted by Michelle who informed him that she had a daughter that was petitioner's. Apparently, petitioner was married at that time and Michelle said she would not allow petitioner to see M.B. Petitioner detailed his unsuccessful efforts to find out the truth of the matter from Michelle and others. In January 1993, he received an order to show cause from King County, Washington, for the support of M.B. in San Francisco. He immediately contacted the prosecutor's office in Washington and notified the prosecutor of his intent to get custody of the child.[2] A blood test was suggested as a means to assist in obtaining custody. Petitioner kept trying to reach the prosecutor's office to find out when arrangements for a blood test could be made. Finally, in May 1993, the prosecutor told him the case was dropped because an adoption of M.B. was taking place. When petitioner made contact with DSS in California, he was informed that his parental rights had been terminated on December 3, 1992. Petitioner declared his address and phone number were readily ascertainable and known to the United States military.

A declaration of an assistant district attorney in San Francisco stated that the whereabouts of petitioner were known "on or before August 1991" and that DSS had contacted the district attorney's office "in July of 1991" and not thereafter.

Opposition to petitioner's application for relief was filed by DSS and by an attorney appointed to represent the minor who, in addition to opposing the motion, also moved to require DSS to comply with court orders freeing the minor for adoption and ordering the child placed for adoption. The prospective adoptive parents also opposed petitioner's application. A hearing was held on July 22, 1993, at which time the court ruled that it had "no jurisdiction whatsoever" over the motion to vacate. The court ordered DSS "to proceed forthwith with the adoption . . . ." Petitioner filed the instant petition on July 29, 1993. We issued an alternative writ and stayed all proceedings on the adoption.

[2]This averment in petitioner's declaration conflicts with a King County court record which contains an entry that petitioner initially denied paternity. Petitioner explains that he did so because he "was advised that the records needed to reflect that [he] denied paternity so as to facility [*sic*] the testing."

DISCUSSION

I

■ A judgment is void for lack of jurisdiction of the person where there is no proper service of process on or appearance by a party to the proceedings. This fundamental principle of jurisdiction applies to juvenile dependency proceedings. (*In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244]; *Ansley* v. *Superior Court* (1986) 185 Cal.App.3d 477, 483 [229 Cal.Rptr. 771]; *In re Antonio F.* (1978) 78 Cal.App.3d 440 [144 Cal.Rptr. 466].) "[T]he state, before depriving a parent of [his parental] interest, must afford him adequate notice and an opportunity to be heard." (*In re B. G., supra,* 11 Cal.3d at pp. 688-689.) ■ Service by publication is sufficient to meet the requirements of jurisdiction only when a person's whereabouts remain unknown despite reasonably diligent inquiry. (Rest.2d Judgments, § 2, com. g; *Donel, Inc.* v. *Badalian* (1978) 87 Cal.App.3d 327, 332 [150 Cal.Rptr. 855].)

We reject the contention of DSS that its efforts were reasonable given the information it had on petitioner. Petitioner's name was on the birth certificate as was the fact that he was in the United States Marines. DSS failed to take the one step which patently appeared to hold the most promise of locating petitioner—an inquiry addressed to that organization. That such an inquiry would have been fruitful is evidenced by the fact that the district attorney was able to find petitioner's address by the time the child was three months old.

The term "reasonable diligence" as used to justify service by publication "denotes a thorough, systematic investigation and inquiry conducted in good faith . . . ." (Judicial Council Com., Deering's Ann. Code Civ. Proc. (1991 ed.), § 415.50, p. 676.) Where the party conducting the investigation ignores the most likely means of finding the defendant, the service is invalid even if the affidavit of diligence is sufficient. (See *Donel, Inc.* v. *Badalian, supra,* 87 Cal.App.3d at p. 333; see also *Olvera* v. *Olvera* (1991) 232 Cal.App.3d 32, 43 [283 Cal.Rptr. 271].) In short, the search efforts undertaken by DSS were woefully deficient and a finding of "reasonable diligence" is wholly unsupportable.

II

■ Petitioner produced an affidavit that furnishes convincing evidence that he did not receive notice of any of the proceedings which led to

termination of his parental rights. The novel question before this court is whether petitioner lost the right to move to challenge jurisdiction in the juvenile court, as that court found, because the order terminating his parental rights was final before his challenge was made. The question is one that has yet to be addressed. Those cases in which the courts have granted relief due to insufficient attempts to provide notice to parents have arisen at a different stage in dependency proceedings. In *In re B. G., supra*, 11 Cal.3d 679, the parent presented her jurisdictional challenge following an order continuing the court's jurisdiction over her two minor children; in *Ansley* v. *Superior Court, supra*, 185 Cal.App.3d 477, the challenge was made in a section 388 petition to vacate a dependency judgment; in *In re Antonio F., supra*, 78 Cal.App.3d 440, the parent opposed jurisdiction at a Civil Code section 232 proceeding to declare a child free from parental custody and control; and in *In re Beebe* (1974) 40 Cal.App.3d 643 [115 Cal.Rptr. 322], the challenge was made on an appeal of a section 232 order. In the only case cited in which jurisdiction was challenged after an order terminating parental rights, the court did not find that the notice was invalid. Rather the court found that reasonable efforts had been made to locate the father and noted that no due process claim had been raised. (*In re Manuel J.* (1984) 150 Cal.App.3d 513, 521 [197 Cal.Rptr. 777].)

Section 366.26, subdivision (h) (hereafter subdivision (h)) provides: "Any order of the court permanently terminating parental rights under this section shall be conclusive and binding upon the minor person, upon the parent or parents and upon all other persons who have been served with citation by publication or otherwise as provided in this chapter. *After making such an order, the court shall have no power to set aside, change, or modify it*, but nothing in this section shall be construed to limit the right to appeal the order." (Italics added.)

Despite this language, however, petitioner contends that sections 473 and 473.5 of the Code of Civil Procedure are available to challenge default judgments because section 348 specifically provides that: "The provisions of Chapter 8 (commencing with Section 469) [and concluding with section 476] of Title 6 of Part 2 of the Code of Civil Procedure relating to variance and amendment of pleadings in civil actions shall apply to petitions and proceedings under this chapter, to the same extent and with the same effect as if proceedings under this chapter were civil actions."[3]

We agree with DSS that section 348 *limits* the application of Code of Civil Procedure sections 469 through 476 to matters "relating to the variance and

---

[3]Section 473.5 of the Code of Civil Procedure applies where constructive notice, although valid, has not resulted in actual notice. Code of Civil Procedure section 473 provides for a motion "to set aside any void judgment or order." Because petitioner was challenging the

amendment of pleadings" and that other matters covered by these sections (including relief from default judgments) are not applicable to dependency proceedings. We reject the position that the quoted phrase is not language of limitation but is merely language describing chapter 8. Unless the phrase is a limitation to application of chapter 8, the words are redundant; no description of chapter 8 is necessary to identify it. Furthermore, interpreting the language "relating to variance and amendment of pleadings" in section 348 as a limitation on the application of chapter 8 is consistent with the prohibition in subdivision (h) against setting aside an order terminating parental rights.

We conclude that the provisions of the Code of Civil Procedure relating to the setting aside of default judgments do not apply to juvenile court dependency proceedings.

 We recognize that petitioner could also have applied to the inherent power of the court which exists independent of any statute to set aside judgments void for want of jurisdiction over the person. (*Estate of Estrem* (1940) 16 Cal.2d 563, 572 [107 P.2d 36]; *Smith* v. *Jones* (1917) 174 Cal. 513, 516 [163 P. 890]; *Sullivan* v. *Sullivan* (1967) 256 Cal.App.2d 301, 303 [64 Cal.Rptr. 82]; *In re Dahnke* (1923) 64 Cal.App. 555, 560 [222 P. 381].) However, the Legislature has purported to remove this power from the juvenile court by its enactment of subdivision (h). We turn now to a consideration of whether this enactment violates due process.

### III

In *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893], the United States Supreme Court enumerated three elements to be considered in determining the requirements of due process: the private interest involved, the government's interest, and the risk of erroneous decisions from the use of existing procedures.

A parent's interest in the custody, care, and management of his or her children is a compelling one, ranked among the most basic of civil rights. (*In re B. G.*, *supra*, 11 Cal.3d 679, 688.) However the state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18,

---

validity of notice by publication, the appropriate section under which to proceed was Code of Civil Procedure section 473 rather than Code of Civil Procedure section 473.5. (See *Rogers* v. *Silverman* (1989) 216 Cal.App.3d 1114, 1121 [265 Cal.Rptr. 286].)

27 [68 L.Ed.2d 640, 650, 101 S.Ct. 2153].) Further, the child has a compelling right to a stable and permanent placement in a family unit which will allow the caretaker to make a full emotional commitment to the child. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [19 Cal.Rptr.2d 544, 851 P.2d 826].) In order to evaluate the balance of these often competing interests, an analysis of the statutory scheme is necessary.

As the California Supreme Court recently stated in addressing a due process challenge to another aspect of section 366.26, ". . . it is important to examine the entire statutory scheme . . . . One section of the dependency law may not be considered in a vacuum." (*In re Marilyn H., supra,* 5 Cal.4th at p. 307.) Under the California statutory scheme, an order terminating parental rights, unlike a default judgment, cannot arise from the failure to answer an initial pleading. A detention hearing must be held, followed by a jurisdictional hearing and a dispositional hearing. Even when reunification services are not required because the whereabouts of the parent is unknown, at least six months must pass before action to terminate parental rights may be taken. (§ 361.5, subd. (d).) Until parental rights have been terminated, both parents must be given notice at each step of the proceedings. (§ 302, subd. (b).)

In the instant case, notice was first required to be given to petitioner approximately 18 months before parental rights were terminated, and the challenge to jurisdiction could have been filed anytime after that until the termination order became final. Unfortunately, petitioner did not obtain sufficient information to exercise his right to challenge jurisdiction until after the time had expired, but this is not a unique situation. Any defendant who has a judgment entered against him or her, which is void for lack of reasonable diligence to give notice, has a finite time to move to vacate the judgment. ■ A motion to vacate a void judgment, whether pursuant to Code of Civil Procedure section 473 or to the court's inherent power, must be made within a reasonable time not to exceed two years. (See *Rogers* v. *Silverman, supra,* 216 Cal.App.3d at p. 1124; 8 Witkin, Cal. Procedure (3d ed., 1993 supp.) Attack on Judgment in Trial Court, §§ 186, 187, p. 123.)

■ The dependency statute provides a significantly shorter time in which to challenge the court's jurisdiction. Without the restriction of subdivision (h), a parent would have up to two years after the termination order was entered to challenge that order for lack of personal jurisdiction. However, that would be an additional two years in which a child and the child's caretakers would have to live with uncertainty, a fact which implicates the state's interest in the welfare of the child and the child's own right to a stable

environment. Under the statutory scheme parental rights may not be terminated until a significant period of time has passed, during which a parent may apply to the court's inherent power to vacate an order or judgment for lack of personal jurisdiction. Given the need for stability and certainty in child dependency matters, we do not believe that the Legislature acted arbitrarily in its restriction of the time in which juvenile court orders may be attacked for lack of notice.

CONCLUSION

The petition is denied. The stay of further proceedings issued by this court is hereby lifted.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied February 2, 1994.