[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1426 
OPINION
In this case, the legislative policies manifest in the dependency statutory scheme, i.e., the prompt resolution of custody status (In re John F. (1994) 27 Cal.App.4th 1365, 1377 [33 Cal.Rptr.2d 225]) and the placement of dependent minors in a permanent and secure home (In re Teneka W. (1995) 37 Cal.App.4th 721, 728 [43 Cal.Rptr.2d 666]) are in conflict with the constitutionally protected right of a parent (whose parental rights may be terminated) to adequate notice and an opportunity to be heard (In re B.G. (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244]). After determining that the conflict arose because the Los Angeles County Department of Children and Family Services (DCFS) failed to give the statutorily prescribed — and court-ordered — notification to the fathers, the juvenile court in effect punished the DCFS by refusing to continue the Welfare and Institutions Code[1] section 366.26 hearing to consider the DCFS recommendation of adoption. The court instead ordered the children into long-term foster care. The DCFS appeals.
While we appreciate the juvenile court's frustration with the repeated failure of the DCFS to follow the statutory requirement for notice by publication, it is inappropriate to discipline the DCFS by refusing to consider adoption for the minors in this case. We therefore reverse the court's order and remand. *Page 1427 
 FACTS AND PROCEDURAL HISTORY
There are three children in this case.[2] Christiano S., born in May 1990, and Anquenette H., also called Destiny, born in October 1992, were taken into custody in July 1993 and declared dependents of the court in October of that year. The juvenile court found that their mother, Patricia L., left them without adequate supervision; that the home was in a filthy, unsanitary and unsafe condition; and that the mother periodically failed to provide the children with the basic necessities of life.
Miracle H. was detained days after her birth in January 1994, and declared a dependent in April 1994, on the ground that she was in substantial danger to her physical health or of suffering severe emotional damage, and there were no reasonable means to protect her without removing her from Patricia's care. Patricia was ordered to attend psychological counseling. DCFS was ordered to provide monitored visits.
Flavio S. is the father of Christiano. Anthony H. is the father of Anquenette and Miracle. In January 1994, at the arraignment/detention hearing involving Miracle, Anthony H. was notified of the hearing by telephone, but he did not appear.
Neither father appeared at the six-month review in September 1994, though both were properly noticed. Jurisdiction was continued. Patricia, who is prone to angry outbursts and suffers from depression, was granted monitored weekly visits and family reunification services were ordered.
In December 1994, adoption assessments were prepared for the three minors. The DCFS concluded that the children were not acceptable for adoptive planning because family reunification was still a legal option. The social worker suggested re-referral in about six months.
The 12-month review hearing was held on March 31, 1995. Both fathers received proper notice; neither appeared. The court continued jurisdiction and continued family reunification services.
On May 4, 1995, the annual status review hearing was continued for all the children except Miracle. The court found that Miracle should remain as placed. A permanency planning hearing was set for November. *Page 1428 
Adoption assessments prepared in April and August 1995 recommended that the children be referred for adoptive planning.
Between May and November, the fathers had no contact with DCFS and did not respond to telephone calls or written communications. On November 2, 1995, at the permanency planning hearing, a contested section 366.26 hearing was set for March 14, 1996.
On March 14, 1996, DCFS requested a continuance because personal service on the fathers had been unsuccessful. The request also stated that "due diligence on both fathers had to be done for publication. The time is now too short and the 3-14-96, 366.26 hearing must be continued."[3] The court continued the matter to July 18, 1996, and ordered DCFS to notice both fathers by publication.
On July 18, DCFS requested a continuance because it had mistakenly prepared for a permanency planning hearing rather than a selection and implementation hearing. A section 366.22 report was prepared instead of a section 366.26 report, and DCFS had not noticed the fathers by publication. The court, in a warning to DCFS, referred to "what's [going to] happen next time if I don't have the right report and if the publication isn't done and served on these people." The hearing was continued to November 20.
In the November 20 social worker's report, DCFS "respectfully recommended that without permanently terminating parental rights, the court identify adoption as the permanent placement goal and order that efforts be made to locate an appropriate adoptive family for the minors . . . for a period not to exceed 60 days." DCFS sought a continuance until January 16, 1997. The reason for the recommendation was that DCFS had failed to publish notification for the fathers.[4] Counsel for Christiano and Anquenette objected to the request for continuance, arguing that the children have a right to a permanent plan. He also told the court, "I don't see any problem at this point based on the maintenance of the relationship by the mother to a guardianship or a long term foster care." Counsel for Patricia joined in that argument. *Page 1429 
The court denied the request for continuance, stating, "The children have been in this system since August 3rd, 1993. That's three years and three months. The children have an absolute right to a permanent plan." The court continued, "[The matter] was set for a contested hearing pursuant to 366.26 on March 14th, '96. At that time, the Department failed to notice the two fathers. [¶] On March 14th, 1996, the Department was again ordered to [publish] notice on the fathers since they again failed to notice them. The two, six hearing was continued to July 18th, '96. [¶] On July 18th, `96, the Department again failed to [publish] notice for the fathers. The two, six hearing had to be continued to today's date, November 20th, 1996, and the Department was again ordered to publish. [¶] Today, the Department has once again failed to notice the fathers by publication or any other method. . . . [¶] Your continuance is denied. I now intend to go forward. Since you do not have notice on the fathers and the law requires notice to proceed with an adoption recommendation, I am foreclosing the department from presenting any evidence at all on the issue of adoption."
DCFS refused to go forward with the hearing on that basis. DCFS stated that if the court were to order the children into long-term foster care it would be over the objection of DCFS. The court stated its intention to proceed over the DCFS objection and without its input. The other parties submitted.
Despite the foregoing, the court stated that it had read, considered and received into evidence the adoption assessment report submitted by DCFS. The court, however, did not state that it had made a finding that the minors would or would not be adopted based on the assessment, as required by section 366.26, subdivision (c)(1). The court found that termination of parental rights and adoption were not in the best interests of the minors, nor was the appointment of a legal guardian. The court placed the minors in long-term foster care.
The minute order from the November 20, 1996, hearing shows that the court "finds that it is not likely that the Minors can or will be adopted."
The DCFS filed a writ petition, which was summarily denied by this division. This appeal followed.
 DISCUSSION Denying DCFS's Request for Continuance Prejudiced the Children. (1a) The juvenile court may terminate parental rights at a hearing pursuant to section 366.26. Before depriving a parent of his or her parental *Page 1430 
interest, the state must afford the parent adequate notice and an opportunity to be heard. (In re B.G., supra, 11 Cal.3d 679, 688-689; David B. v. Superior Court, supra, 21 Cal.App.4th 1010, 1016.) Pursuant to section 366.23, subdivision (a), once a section 366.26 hearing is scheduled, notice must be given to the parent of a minor in one of the ways listed in subdivision (b): personal or substituted service, or by personal service or certified mail if the parent resides out of state. If, however, the parents' whereabouts are unknown, the court determines that there has been due diligence in attempting to locate and serve the parent, and the child welfare agency such as DCFS does not limit the recommendation to legal guardianship or long-term foster care, the court must order service to the parent by certified mail to counsel for the parent or order service by publication, once a week for four successive weeks. (§ 366.23, subd. (b)(5)(B).)
In this case, the court did order service by publication. The question is what appropriate action is available to the trial court when DCFS fails to follow the court's order.
DCFS argues that the court should not have proceeded with the hearing, and that DCFS and the children were prejudiced by the court's decision. Because the court could not consider termination of the fathers' parental rights and it could not consider adoption without continuing the hearing, the refusal to continue limited the court to considering either legal guardianship or long-term foster care. That limitation of options, DCFS argues, was an abrogation of the minors' permanency rights by the elimination of the legislatively preferred permanent plan of adoption.
The DCFS argument is premised on a finding that the children are adoptable. Pursuant to section 366.26, subdivision (c)(1), the court terminates parental rights "only if it determines by clear and convincing evidence that it is likely that the minor will be adopted based upon the assessment made pursuant to subdivision (i) of Section 366.21 or subdivision (b) of Section 366.22."
Both section 366.21, subdivision (i) and section 366.22, subdivision (b) provide, "Whenever a court orders that a hearing pursuant to Section 366.26 shall be held, it shall direct the agency supervising the child and the licensed county adoption agency, or the State Department of Social Services when it is acting as an adoption agency . . . to prepare an assessment regarding the likelihood that the minor will be adopted if parental rights are terminated." Both subdivisions include subparts that identify the elements of the assessment.
DCFS contends, without citation, that if, as in this case, the adoption assessment contains clear and convincing evidence that it is likely that the *Page 1431 
minor will be adopted, the court must terminate parental rights.(2) We review the factual basis of an adoptability finding by determining whether the record contains substantial evidence from which a reasonable trier of fact could make the finding made by the trial court by clear and convincing evidence. (In re BabyBoy L. (1994) 24 Cal.App.4th 596, 610 [29 Cal.Rptr.2d 654].)
(1b) DCFS submitted a section 366.22, subdivision (b) assessment, signed by a social worker from Lancaster Adoptions as well as the DCFS social worker, regarding adoption of the minors. The assessment was the only evidence that was before the court on the issue of adoptability.
The very first point of an adoption assessment concerns "[c]urrent search efforts for an absent parent or parents." (§ 366.22, subd. (b)(1).) Where, as here, the DCFS cannot establish that it has complied with statutory notice requirements for the parent and therefore cannot terminate parental rights, the trial court cannot make a finding of the minor's adoptability. DCFS accepted that due process prevented the court from finding that the children were adoptable because it asked for a continuance in order to give the notice by publication to the fathers. Therefore, we do not agree with DCFS that the court was obligated to find at the November 20, 1996, hearing that the minors were adoptable.
Even though the court could not make the finding of adoptability at the November 1996 hearing, the court did not have the discretion to ignore the other aspects of the assessment and conclude that the children were not adoptable for all time. The rest of the assessment could support a finding of adoptability.
On the point of the amount and nature of contact with the minors and the parents (§ 366.22, subd. (b)(2)), the assessment states that Patricia "suffers from mental health problems . . . [that] render her incapable of adequately caring for her children." The report recounts several instances of Patricia becoming angry and upset, yelling and arguing with caseworkers in person and by phone. Moreover, no "real connection between the children and their mother" was observed by the caseworker monitoring the visits. The children refer to Patricia as their "foster mommy." The fathers, of course, have no relationship with the children at all.
In response to the section 366.22, subdivision (b)(3) requirement that the minors' medical, developmental, scholastic, mental and emotional status be evaluated, the assessment reported that Christiano had no major psychological disorders, but he was being evaluated for a urinary problem (enuresis) *Page 1432 
that appeared to have no medical cause. However, in October 1996, he was moved to a new foster home and his enuresis had not manifested since then. Christiano has asthma and uses an inhaler as needed. He was developmentally within normal limits, and was performing scholastically within normal limits. Emotionally he was doing "fairly well."
Destiny was reported to be doing well. She had no medical or health problems. She was talking in complex sentences and had learned manners. She said, "Excuse me" without being prompted. She was doing well in the day care/preschool she was attending. Her foster mother reported that her behavior is 100 percent improved since she arrived in the home. According to the assessment, Destiny exhibits behavior of having been sexually abused, behavior that had diminished but was on the increase at the time of the report. Neither the foster mother nor the social worker could say why.
Miracle was doing well and had no medical or health problems. She was improving developmentally, and her behavior had improved.
Moving to the question of the eligibility and commitment of any prospective adoptive parent, particularly the caregiver (§ 366.22, subd. (b)(4)), the assessment stated that the children's current foster parents did not want to adopt the children. The case plan for the children was to have them all adopted as a sibling set. DCFS was in the process of recruiting adoptive parents.
Section 366.22, subdivision (b)(5) requires an assessment of the prospective adoptive parent or guardian. The report again stated that no parents had been identified.
Finally, with respect to the likelihood that the minors will be adopted if parental rights are terminated (§ 366.22, subd. (b)(6)), the assessment stated, "Christiano, Destiny and Miracle are adoptable children. They get along well with each other and care for one another as siblings. They each have charming and endearing personalities. It is in all likelihood that once a prospective adoptive family has been identified and the children are subsequently placed into the adoptive home, that they will be adopted after parental rights are terminated."
Because the report would support a finding of adoptability, the court should not have taken away any chance the children might have to find a permanent and stable home by ordering them into long-term foster care because DCFS violated the court's order to provide notice by publication. The court's ruling was prompted in part by the fact that the children were *Page 1433 
entitled to a permanent plan. That is, of course, true. (3) The court must also keep in mind, though, that the "dependency scheme is informed by a policy that respects the child's interest in belonging to a family unit and protects his or her right to `a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' (Inre Marilyn H. (1993) 5 Cal.4th 295, 306 [19 Cal.Rptr.2d 544,851 P.2d 826].) Consonant with this policy, long-term foster care is discouraged as a permanent placement solution for dependent children." (In re John F., supra, 27 Cal.App.4th 1365, 1376, fn. omitted.) The John F. court quoted section 396, which states, "`It is the policy of the Legislature that foster care should be a temporary method of care for the children of this state, that children have a right to a normal home life, that reunification with the natural parent or parents or another alternate permanent living situation such as adoption or guardianship are more suitable to a child's well-being than is foster care, and that this state has a responsibility to attempt to ensure that children are given the chance to have a happy and healthy life, and that, to the extent possible, the current practice of moving children receiving foster care services from one foster home to another until they reach the age of majority should be discontinued.'" (27 Cal.App.4th at p. 1376, fn. 6.)(1c) We therefore reverse the section 366.26 order made November 1996 and remand to the court for a new section 366.26 hearing.
Of course, DCFS will again have to be ordered to notice the fathers by publication. If DCFS fails to comply, the court has the option of setting an order to show cause hearing and imposing appropriate sanctions until DCFS is in compliance. The court does not have the option of refusing to consider adoption.
The court also found that termination of parental rights would be detrimental to the children and was not in their best interest. Under section 366.26, subdivision (c)(1), those findings are to be made only if the court finds that the children are likely to be adopted. In addition, after the finding is made, the parent then has the burden to show termination would be detrimental to the minor under one of four specified exceptions in subparts (A) through (D) of subdivision (c)(1) of section 366.26. (In re Tabatha G. (1996) 45 Cal.App.4th 1159, 1164 [53 Cal.Rptr.2d 93].) The record does not establish the evidentiary basis for the court's finding of detriment to the children. In any case, the court did not make the requisite finding regarding the likelihood of adoption, and the additional findings are of no effect. If, after notice by publication is complete, the court finds the children are likely to be adopted, it may then consider whether termination of parental rights would be detrimental to the children.
We note, moreover, that there is a conflict in the case law with respect to the interpretation of section 366.26, subdivision (c)(4), which states: "If the *Page 1434 
court finds that adoption of the minor or termination of parental rights is not in the interests of the minor, or that one of the conditions in subparagraph (A), (B), (C), or (D) of paragraph (1) or in paragraph (2) applies, the court shall either order that the present caretakers or other appropriate persons shall become legal guardians of the minor or order that the minor remain in long-term foster care. . . ." The court in In re Tabatha G.,supra, 45 Cal.App.4th at pages 1164-1165 held that there is no best interest exception to selecting and implementing adoption as a permanent plan for an adoptable child.
More recently, In re Jose V. (1996) 50 Cal.App.4th 1792, 1800 [58 Cal.Rptr.2d 684] stated that ". . . the language in subdivision (c)(4) clearly authorizes the court to order guardianship if it finds that one of the circumstances in subdivision (c)(1)(A) through (D) is present or it finds that adoption is not in the minor's interests. This appears to us to allow for the possibility that some circumstance or combination of circumstances could exist which would support a finding that adoption was not in the child's best interests even though none of the enumerated exceptions applied." (Original italics.)
The Supreme Court denied review in both cases, a fact which may not be that significant because it appears that the Jose V.
language is dictum. What is clear from both cases, though, is that the dependency court does not reach the question of best interests until there is a finding that adoption is a likelihood. Thus, the court's finding that terminating parental rights was not in the minors' best interests was premature and is of no effect.
 DISPOSITION
The permanent placement order of November 20, 1996, is reversed. The matter is remanded to the dependency court for proceedings consistent with this opinion.
Fukuto, Acting P.J., and Zebrowski, J., concurred.
[1] All further statutory references are to the Welfare and Institutions Code.
[2] The mother, Patricia L., has five older children who were also declared dependents of the court. Four of them were placed in long-term foster care, and the fifth is described in the record as being a ward of the court under section 602. These five children are not the subjects of this appeal.
[3] "The term `reasonable diligence' as used to justify service by publication `denotes a thorough, systematic investigation and inquiry conducted in good faith. . . .' (Judicial Council Com., Deering's Ann. Code Civ. Proc. (1991 ed.), § 415.50, p. 676.)" (David B. v. Superior Court (1994) 21 Cal.App.4th 1010, 1016 [26 Cal.Rptr.2d 586].)
[4] In its brief, DCFS provided this explanation: "On July 25, 1996, DCFS executed a notice of publication for each father. However, due to the relatively new nature of the `computerization' of services at DCFS, the request for notice by publication did not get transmitted. Although DCFS input the notice information into the recently installed Civic Center New Source computer and transmitted it as was their standard practice, it was never received by the news agency." The trial court obviously did not consider this information, and it is not a factor in our reversal of the juvenile court order. *Page 1435