[No. B136904. Second Dist., Div. One. Nov. 17, 2000.]

In re ARLYNE A. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
SALVADOR A., Defendant and Appellant.

592

## COUNSEL

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Gary P. Gross, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**ORTEGA, J.**—In this juvenile dependency proceeding, Salvador A. claims the trial court lacked personal jurisdiction over him due to the Los Angeles

County Department of Children and Family Services' (Department) failure to exercise reasonable diligence in trying to locate him. With respect to appellant, we reverse the orders under review, to the extent they apply to appellant's four biological children, for lack of personal jurisdiction. We remand for further proceedings.

## BACKGROUND

The dependent minors are appellant's stepdaughter, Arlyne A. (born in 1989), and appellant's biological children, Marcus (born in 1993), Alfred (born in 1994), Daniel (born in 1995), and Alyssia (born in 1998). The minors' biological mother, Ramona A., is not a party to her husband's appeal.[1]

About June 1998, Arlyne reported that appellant had been sexually molesting her for several years. At the time, appellant and Ramona were separated. Ramona was then living with all of the minors, at their maternal grandmother's (Elena M.) house in El Monte. Appellant was then living with his parents in Rialto.

Ramona reported Arlyne's sexual molestation allegations to the Temple substation of the Los Angeles County Sheriff's Department. The sheriff's department transferred the report to the Colton Police Department for investigation. (Before their separation, Ramona, appellant, and minors were living on Meadow Lane in Colton, where the alleged sexual abuse occurred.) The police report correctly listed appellant's home address and phone number as that of his parents' home in Rialto. It also listed his (apparently correct) business address and telephone number in Ontario.

The district attorney declined to press charges against appellant. The Department filed a dependency petition regarding the sexual molestation allegations, but closed the case after determining that appellant was not living at Elena's home, and that Arlyne was receiving sexual abuse counseling.

About September 1998, Ramona and her children, with the exception of Arlyne, moved to Rialto. Ramona did not give Arlyne or Elena her new address. Ramona abandoned Arlyne with Elena without making any provisions for her support or medical care. As a result of this abandonment, the Department reopened Arlyne's dependency case in October 1998.

---

[1] In a prior proceeding, we denied mother Ramona A.'s petition for extraordinary writ review (Cal. Rules of Court, rule 39.1B) of the order setting a termination of parental rights hearing with regard to dependent minor Arlyne A. (*In re Arlyne A.* (Sept. 19, 2000, B141573) [nonpub. opn.].)

On November 4, 1998, the Department filed a dependency petition (amended in January 1999) regarding all five minors. The petition alleged among other things that appellant had: (1) regularly physically abused all of the minors; (2) sexually abused Arlyne for several years, thereby placing the other minors at risk of similar sexual abuse; (3) physically assaulted Ramona in the minors' presence; and (4) acquired convictions for weapons violations and spousal abuse. The petition listed appellant's last known address as the family's former Meadow Lane address in Colton. The petition listed as unknown the whereabouts of Ramona and the four minors in her custody.

At the November 5, 1998, detention hearing, the trial court ordered the Department to provide due diligence reports regarding its efforts to locate appellant and Ramona. Arlyne's attorney, Ms. Padilla, stated that according to Elena, "the mother [Ramona] may be with her in-laws in [either] Colton or . . . Rialto, California, and that the [other four] minors are with her." Based on this statement, the court ordered the Department "to investigate the whereabouts of the minors. The grandmother has information that could lead to their whereabouts." The court ordered all of the minors detained.

Before the next hearing, the Department filed "Declaration[s] Regarding Due Diligence," dated January 27, 1999. Regarding Ramona, the Department reported that a Department of Motor Vehicles (DMV) check had turned up her last known address in Colton, but there was no telephone listing for her in Colton. As for appellant, the Department reported that a DMV check had turned up a Fontana address from 1994, but there was no telephone listing for appellant in Fontana. (The Department sent notices to appellant at the Fontana address.) As for both Ramona and appellant, the Department stated (despite Elena's statement that appellant's parents lived in either Colton or Rialto) there were, "No other known area[]s of possible residence." The Department also stated, "Maternal grandmother [Elena] does not know [appellant's] whereabouts." "Neither minor [Arlyne] nor maternal grandmother [Elena] know[s] the whereabouts of the minor's mother."[2]

On January 28, 1999, the trial court found the Department had demonstrated due diligence in attempting to locate appellant, but not Ramona. Elena, who was present at the hearing, stated: "You know, . . . the police department in Colton knows where the father works. I don't see why they can't just follow him home and try to see where they are at. She told me that she is in walking distance from the in-laws' house, and I know the police department has the address of the in-laws' house." The following colloquy

---

[2]The Department's declaration also indicated the other usual records had been checked, including: county jail, CII (Criminal Index and Information System), postal service, child abuse registry, probation/parole, and voter registration.

transpired: "The Court: You need to talk to the social worker about that. [¶] The Maternal Grandmother: I've told them. [¶] The Court: Well, the social worker is ordered to follow through on the information that the maternal grandmother has on the whereabouts of the parents. They are to address that in the supplemental report. [¶] The Court Officer: Your Honor, I did interview the grandmother. I talked to the D.I. She just knows around the area. [¶] The Court: She stated that the police department does know their whereabouts and wants you to contact the police station near that home. [¶] The Maternal Grandmother: When they ma[d]e the police report on the child molestation, my daughter was still living with me, and I heard her give his address, his Social Security number, his work address, and everything to the police department. So it's on the police report. [¶] The Court: Okay. If they are still there. But they need to investigate that." The trial court continued the matter to allow the Department time to provide notice to Ramona. The January 28, 1999, minute order stated in relevant part: "C[hildren's] S[ervices] W[orker] is to follow thr[ough] on information provided by M[aternal] G[randmother] re: parents['] whereabouts." (Some capitalization omitted.)

The matter was continued to April 8, 1999, for a pretrial resolution conference. Before that hearing, the Department filed a children's services worker's (CSW) report and two more "Declaration[s] Regarding Due Diligence," dated April 7, 1999. The April due diligence declarations provided no new information concerning appellant's or Ramona's whereabouts. The CSW's report stated that the parents' and their four minors' whereabouts remained unknown. Regarding Elena's information that the police report contained appellant's address, the CSW stated: "This writer has spoken with Detective Reed at the Colton Police Department. She informed this writer that she is not aware of the whereabouts of the mother and minors Marcos, Alfred, Daniel, and Alyssia. [¶] The maternal grandmother, Elena M[.], states that the mother and children live within walking distance of [appellant's] parents' home. She is not aware of the mother's address or the telephone number of the [paternal] grandparents. In addition, she stated that the Los Angeles Sheriff's Department (Temple Station) took a report on 5/30/98 and listed the address of the [paternal] grandparents in that report. However, when I called the Temple Station, there was no record of this report."

At the April 8, 1999, hearing, the trial court found that the Department had demonstrated due diligence in attempting to locate both appellant and Ramona. The court declared the minors to be dependent minors under Welfare and Institutions Code section 300, subdivisions (a), (b), (d), (g), and (j). As for Arlyne, the court set a permanent plan hearing in November. As for the other four minors, the court would conduct a disposition hearing on that date.

In late April or early May 1999, a CSW finally made contact with Ramona. After obtaining Ramona's address, the CSW took the other four minors into protective custody on May 4, 1999. All of the minors were placed with Elena.

On May 7, 1999, both Ramona and appellant appeared in court for a detention hearing. Appellant orally moved to set aside the jurisdictional and due diligence findings, and was directed to file a written notice of motion and motion. The court set a disposition hearing for July 2, 1999.

In June 1999, appellant filed a written motion to set aside the adjudication findings. Appellant's motion was set to be heard at the July 2, 1999, disposition hearing. Ramona filed a notice of joinder.

Appellant's motion alleged the Department could have located him at his parents' Rialto address by simply consulting its own records. The motion stated: "the department knew or should have known of father's address since the Department had previously investigated this matter during the period of July through October 1998, and closed this case. [¶] . . . Father contends that the notice is defective and that the Department knew, or should have known the father's mailing address in Rialto, California, since the Department had contact with him back in the summer of 1998, which is the current address of father."

The Department opposed the motion, contending neither appellant nor Ramona had supplied evidence to support their contention that the Department knew or should have known of appellant's parents' Rialto address. The Department pointed out: "The father's declaration states that he had been living with his father in Rialto from some time in April 1998 but does not indicate that the Department was aware of this fact. Father's counsel, in the memorandum of Points and Authorities, asserts that the Mother had informed Mr. Harris [of the Department] that the father was living with his father in Rialto. However, it is interesting to note that the mother, in her own declaration, does not make this assertion. The mother merely states that she and her husband separated in April 1998 but neither states where the father moved to nor whether she was aware of his address." The Department submitted the declaration of CSW Stacy Phan, who stated that she was unaware of the parents' whereabouts until she finally spoke with Ramona in late April 1999. The Department also submitted letters from Arlyne's therapist, Dr. Toni Cavanagh Johnson, regarding the unsuccessful efforts the therapist had made to locate Ramona.

The trial court continued appellant's motion several times, to allow him to obtain the Department's records of the prior case to support his assertion that

the Department knew, or should have known, his parents' Rialto address. (It is undisputed that the records eventually obtained from the Department failed to reveal that the Department was aware of appellant's parents' address in Rialto.) At an interim hearing on August 6, 1999, the trial court asked appellant's counsel if there was any evidence showing the Department knew to look for appellant in Rialto. The trial court noted the Department's written reports did not indicate that the Department knew appellant's parents lived in Rialto.[3] The trial court inquired whether counsel had obtained the police report that allegedly contained the Rialto address. Appellant's counsel stated he had not: "And that has always been my client's complaint. I've tried to get those reports from the Department's own logs, emergency logs, and I've never been able to get those—any report from June of '98."

Immediately before the final November 5, 1999, hearing on appellant's motion, the Department finally obtained the police report from the Colton Police Department, and submitted it to the trial court. The police report, as Elena had stated it would, correctly listed appellant's address as that of his parents' home in Rialto.

On November 5, 1999, the trial court denied appellant's motion to set aside the adjudication findings for lack of due diligence. The court found that as for Ramona, the police report did not show her current address. As for appellant, the court found that even if the police report "was written in November [1998, in time for the January 27, 1999, dependency hearing], I don't believe that this Department had any way of knowing any other whereabouts of these parents, and I don't believe that they're remiss in their notice obligations. And, in fact, Mother's due diligence was repeated for completion. You can't disappear, not tell anyone where you go, and then complain when they can't find you. All right? That's the bottom line."

Appellant appeals from the orders: (1) adjudicating minors Marcus, Alfred, Daniel, and Alyssia to be dependent minors as described by Welfare and Institutions Code section 300; (2) denying his motion to set aside the adjudication order for lack of due diligence; and (3) declaring the four minors to be dependents of the juvenile court.[4]

---

[3]The trial judge failed to mention that Arlyne's attorney, Padilla, had told the court at the November 5, 1998, hearing that appellant's parents lived in either Colton or Rialto.

[4]Given that appellant is Arlyne A.'s *step*father, he obviously lacks standing to challenge any of the orders concerning her. We leave it to the trial court to determine, if necessary, what impact our ruling in this appeal has, if any, on the proceedings concerning Arlyne. We are not aware whether the scheduled termination of parental rights hearing has been held regarding Arlyne.

DISCUSSION

Appellant contends the Department failed to exercise due diligence because his parents' Rialto address was readily available through: (1) the police report from the Colton Police Department, which Elena had accurately stated would contain appellant's current home and work addresses; and (2) directory assistance information for the City of Rialto. Appellant points out that the Department was aware, as early as the November 5, 1998, detention hearing, that his parents lived in either Colton or Rialto. (We note that appellant and his father share the same first and last names.)

The "interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights [citations][.] [T]he state, before depriving a parent of this interest, must afford him adequate notice and an opportunity to be heard. [Citations.]" (*In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244].) "The means employed to give notice 'must be such as one, desirous of actually informing the absentee, might reasonably adopt to accomplish it.'" (*In re Antonio F.* (1978) 78 Cal.App.3d 440, 450 [144 Cal.Rptr. 466].) "The term 'reasonable diligence' as used to justify service by publication 'denotes a thorough, systematic investigation and inquiry conducted in good faith . . . .' [Citation.] Where the party conducting the investigation ignores the most likely means of finding the defendant, the service is invalid even if the affidavit of diligence is sufficient. [Citations.]" (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 [26 Cal.Rptr.2d 586].)

In *David B. v. Superior Court, supra,* 21 Cal.App.4th 1010, the appellate court concluded the children's services department's efforts to locate the father in a dependency proceeding were insufficient. In *David B.*, the child's birth certificate listed both the father's name and "the fact that he was in the United States Marines. [The department] failed to take the one step which patently appeared to hold the most promise of locating [the father]—an inquiry addressed to that organization. That such an inquiry would have been fruitful is evidenced by the fact that the district attorney was able to find [the father's] address by the time the child was three months old." (*Id.* at p. 1016.)

In this case, the Department filed declarations of due diligence that, in and of themselves, demonstrated a reasonable degree of diligence in trying to locate appellant. The record, however, plainly demonstrates that the Department *ignored* the more timely information supplied by both Arlyne's attorney and Elena that appellant's parents were living in Rialto. The

Department failed to take the simple and most direct step of calling directory assistance to find the parents' number in Rialto. Instead, the Department unreasonably limited its directory assistance search to Fontana, based on the DMV's *1994* address for appellant, which was *five years old.* The unreasonableness of the Department's reliance on the stale Fontana address is amply demonstrated by the fact that the Department *knew* appellant's last known address was on Meadow Lane in Colton. Despite that knowledge, the Department purported to notify appellant by sending the hearing notices to the old Fontana address.

In addition, the Department failed to thoroughly and systematically investigate Elena's tip regarding the Colton Police Department. Elena stated that the Colton Police Department knew appellant's home and work addresses because they were listed on the police report. Although the trial court directed the Department to investigate that information, the Department again failed to make a sufficiently thorough inquiry. While the CSW tried, unsuccessfully, to obtain the police report from the Los Angeles Sheriff's Department (Temple Station), the CSW neglected the next reasonable step of seeking a copy of the report from the Colton Police Department, the actual investigating agency. Instead, the CSW merely asked a Colton detective if she knew of Ramona's whereabouts. There is nothing in the record to indicate the CSW asked the detective for the police report. It was not until after the trial court specifically asked about the police report at the August 6, 1999, hearing that the Department finally obtained the report.

In this case, as in *David B. v. Superior Court, supra,* 21 Cal.App.4th at page 1016, "Where the party conducting the investigation ignores the most likely means of finding the defendant, the service is invalid even if the affidavit of diligence is sufficient. [Citations.]" Although the Department searched the standard avenues available to help locate a missing parent, it failed to search the specific ones most likely, under the unique facts known to the Department, to yield appellant's address. Accordingly, the trial court's finding of reasonable diligence is not supported by the record.

### DISPOSITION

Due to a lack of personal jurisdiction over appellant, with respect to appellant only, we reverse the following orders to the extent they apply to Marcus, Alfred, Daniel, and Alyssia: (1) adjudicating the minors to be dependent minors as described by Welfare and Institutions Code section 300; (2) denying appellant's motion to set aside the adjudication order for lack of due diligence; and (3) declaring the minors to be dependents of the juvenile court. Regarding the four minors named above, we direct the trial

court to start over with the dependency proceedings after providing appellant with proper notice.

Spencer, P. J., and Mallano, J., concurred.