Filed 1/6/14  In re I.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re I.H. et al., Persons Coming Under the Juvenile Court Law. | C073903 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, | (Super. Ct. Nos. J35869 & J35870) |
| Plaintiff and Respondent, | |
| v. | |
| C.P., | |
| Defendant and Appellant. | |

Appellant C.P., the alleged father of minors I.H. and R.H., appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, §§ 395, 366.26.)[1]  Appellant contends the juvenile court erred in (1) failing to ensure that

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

appellant received sufficient notice of the dependency proceedings, (2) terminating parental rights before determining whether appellant was the biological father, and (3) failing to adequately advise him of his obligation to file a writ petition to preserve his right to appeal orders setting a hearing under section 366.26.

We conclude (1) the efforts to locate appellant were sufficient, and any error in providing initial notice to appellant was harmless; (2) appellant forfeited his paternity claim; and (3) we need not address his third contention because we have addressed his other claims.

We will affirm the juvenile court's orders.

## BACKGROUND

The minors were born nine weeks premature and placed in a neonatal intensive care unit. The minors and the mother tested positive for marijuana. Two weeks later, the Butte County Department of Employment and Social Services (DESS) filed a dependency petition pursuant to section 300, subdivisions (a) and (b), after finding that the mother left the minors' two half-siblings in poor conditions with inadequate provisions and supervision.[2] The mother informed DESS that appellant was the minors' biological father, but she had no information on how to contact him because he worked in a band and traveled. When the May 2011 detention report was filed, DESS had not located appellant.

The juvenile court detained the minors in May 2011. Appellant was not present at the detention hearing, and he also did not appear at the June 2011 jurisdiction hearing in which the juvenile court sustained the petitions.

---

[2] The minors' half-siblings were placed in emergency protective custody and dependency proceedings were initiated as to them. They are not parties to this appeal.

The July 2011 disposition report noted appellant was not named in the minors' birth certificates or present at their births. Pursuant to section 361.5, subdivision (a), DESS recommended no services for appellant, because he was an alleged father.

The disposition report said DESS did not have any contact with appellant. In June 2011, a DESS social worker and a Chico Police Department detective went to the last known address of appellant in Chico. They spoke with appellant's wife, who said appellant had been deported to Mexico a few months earlier. The social worker left a business card and asked appellant's wife to provide the contact information to appellant. Eleven days later, Chico police reported that they suspected appellant had returned to his home in Chico, because an officer saw him earlier that day.

Appellant was not present at the July 2011 disposition hearing. The juvenile court found that paternity was not established and ordered services for mother.

The January 2012 status review report recommended terminating mother's services. Appellant contacted DESS three days before the report was filed. He confirmed his address was the Chico address where the social worker previously left a business card with his wife. He believed he was the biological father of the minors and planned to attend the January 2012 status review hearing where he would request placing the children with him.

Notice of the January 2012 six-month hearing was sent to appellant at the Chico address, but appellant was not present at the January 2012 status review hearing. The juvenile court set the matter for a February 2012 contested hearing.

Appellant was not present at the February 2012 hearing. The juvenile court continued the hearing to the next month. At the March 2012 hearing, appellant was not present. The juvenile court found, among other things, that notice of the hearing had been given as required by law. The juvenile court terminated the mother's services and set a section 366.26 hearing. Notice of the August 2012 section 366.26 hearing was sent to appellant at the Chico address.

3

Appellant was not present at the August 2012 section 366.26 hearing. The juvenile court continued the matter to September 2012 so the social worker could prepare a request to change a court order. Notice of the continued hearing was mailed to appellant at the Chico address.

The September 2012 report said appellant could not be personally served for the hearing because he moved without leaving a forwarding address. Regarding the request to change a court order, DESS attached a declaration of due diligence, indicating the efforts that had been made to locate appellant, such as visiting the Chico address and conducting various database searches, including a search in a Web site provided by the county jail. DESS had been unable to locate appellant.

In September 2012, the juvenile court granted DESS's request to notify appellant by publication. The juvenile court continued the section 366.26 hearing to December 2012. Notice for that hearing was published, and was also mailed to appellant at an Oregon address.

Appellant did not appear at the December hearing, so the matter was continued to February 2013. Appellant was personally served with notice of the continued hearing.

The February 2013 section 366.26 report stated the minors had lived with their potential adoptive parents for nine months. The couple was suitable and committed to adopting the children. DESS concluded the minors were likely to be adopted if parental rights were terminated.

Appellant appeared at the February 2013 hearing. He told the juvenile court he wanted DNA testing to see if the minors were his children. When appellant requested a Spanish interpreter, the juvenile court recessed until one was available. After an interpreter was found, appellant confirmed he lived at the Oregon address where notice had been sent for the December 2012 hearing. He had lived at the Oregon address for seven months. Before that, appellant had lived at the Chico address for about eight months.

4

Asked if he was the minors' father, appellant replied, "I'm not sure." He said if the minors were conceived in late 2010, it was "possible" he could be their father, but the mother "had other guys and other relationships." He never told anyone about the children other than his mother, he did not say they were his, and he was not present at their birth. Appellant learned about the minors when they were two months old but never provided support for them.

Appellant's prospective appointed counsel told the juvenile court that appellant wanted DNA testing. Appellant had cards for two social workers, visited the mother's two other children and asked about the minors, and he met with a social worker. Counsel informed the juvenile court that she accompanied appellant to child support services, where he filed a Judicial Council form JV-505, Statement Regarding Parentage (JV-505 form), request for DNA testing.

The juvenile court appointed the prospective counsel as appellant's counsel and continued the matter (over DESS objection) to permit appellant to obtain DNA testing from child support services. Appellant remained an alleged father. Appellant's counsel requested a complete copy of appellant's file, including all due diligence.

Appellant was not present at the continued hearing in March 2013. His counsel told the juvenile court that after the prior hearing, she went with appellant to child support services for the DNA testing. According to counsel, "I've had numerous conversations, or tried to have numerous conversations, with Family Support Division, and I've been shuffled around to several different people." Counsel spoke with a woman "who said that they are pursuing the filing of a complaint and was surprised to learn that I had actually come into the office with [appellant] on February 26th because she said a complaint should have been generated rather quickly, but it had not been done, and she was going to discuss it with the case manager and get back to me . . . ." Counsel said she did not hear back from the woman and she was "not sure what's going on over there."

5

Counsel told the juvenile court appellant was very good about maintaining contact with her. She and appellant gave the Family Support Division the necessary information, but they had not yet filed a case and said they could not set up DNA testing until they filed a complaint against appellant and he responded by requesting DNA testing. Counsel told the juvenile court she did not have any prior reports or the due diligence and she wanted to go over the case with her client to see if he had received proper notice. Counsel asked the juvenile court for a 30-day continuance. The juvenile court continued the matter to April 2013.

Appellant was not present at the April 2013 hearing. His counsel told the juvenile court she did not know if her client had received DNA testing. The day after the prior hearing, counsel wrote appellant at the address she had for him. She also called him and learned that he received his mail at a post office box rather than at the address she had for him. She sent a letter to the post office box, but he did not respond. Counsel told the juvenile court: "I advised him of today's court date, if he still wished to contest the termination of his parental rights. And I haven't heard from him in that regard, and he's not present today." Counsel objected to termination of parental rights, but did not present any evidence.

The juvenile court terminated parental rights with a permanent plan of adoption.

## DISCUSSION

### I

Appellant contends the juvenile court erred in failing to ensure that he received sufficient notice of the dependency proceedings.

Appellant did not establish paternity or hold the minors out as his own; thus he was only an alleged father. (*In re J.H.* (2011) 198 Cal.App.4th 635, 644.) "Due process for an alleged father requires only that he be given notice and an opportunity to appear and assert a position and attempt to change his paternity status, in accordance with procedures set out in section 316.2. [Citation.] He is not entitled to appointed counsel or

6

to reunification services. [Citation.]" (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1120 (*Kobe A.*).)

Section 316.2, subdivision (b) provides:

"If, after the court inquiry, one or more men are identified as an alleged father, each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child. [A JV-505 form] shall be included with the notice. Nothing in this section shall preclude a court from terminating a father's parental rights even if an action has been filed under Section 7630 or 7631 of the Family Code."

Appellant contests both the adequacy of DESS's efforts to find him and the notice afforded at several stages of the proceedings. He claims DESS erred when the social worker left a business card at his last reported address rather than notice of the jurisdiction hearing and a JV-505 form. "More disturbing" to appellant is the failure to notify him of the disposition hearing at the Chico address after Chico police reported seeing him in the area. Appellant further claims that when notice of a hearing was first sent to him in January 2012, there is no indication that it included a JV-505 form or informed him that his parental rights could be terminated or the minors could be adopted. Admitting he did not attend that hearing even though he responded to the notice by contacting the social worker, appellant points out there is no evidence he was notified of the two subsequent proceedings or that DESS ever interviewed him or spoke to him again.

We first address DESS's initial attempts to find appellant. "The child welfare agency must act with diligence to locate a missing parent. [Citation.]" (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188.) Reasonable diligence " ' "denotes a thorough, systematic investigation and inquiry conducted in good faith . . . ." ' " (*In re Arlyne A.*

7

(2000) 85 Cal.App.4th 591, 598, quoting *David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016.)  "[I]n the case of persons missing or unknown[,] employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights.  [Citations.]"  (*Mullane v. Central Hanover B. & T. Co.* (1950) 339 U.S. 306, 317 [94 L.Ed. 865, 875].)

DESS was not required to send notice of the jurisdiction and disposition hearing to the Chico address.  Appellant knew about the minors two months after their birth, but he did not try to contact DESS.  The mother told the agency about appellant, but gave no address where he could be reached or any other contact information.  After DESS learned appellant's last known residence was the Chico address, a social worker and police officer went there and met appellant's wife, who told them he had been deported to Mexico and left no forwarding address.  Contrary to appellant's assertion, due process did not require DESS to leave notice of the proceedings at the Chico address, because DESS had no information that he still lived there and had been told that he did not.  Although police reported seeing appellant in the area within two weeks of the interview with mother, DESS still had no information that appellant was residing at his last known address.  Nonetheless, the social worker had left a business card so appellant could contact DESS.  Appellant did not respond at that point.

DESS's investigation of appellant's whereabouts was adequate, but the initial notice it sent to him is another matter.  That notice merely informed him of the six-month review hearing.  As appellant correctly points out, the notice did not comport with section 316.2 as it did not include a JV-505 form.  Although appellant eventually was able to fill out a JV-505 form and request paternity testing, the omission of the form deprived him of a mechanism by which he could have compelled the juvenile court to make a paternity determination.  In addition, the notice failed to comply with section 316.2 by omitting

8

any reference to the possibility that parental rights could be terminated and the minors adopted. We therefore agree with appellant that the initial notice was inadequate.

However, this does not end our inquiry. The California Constitution provides: "No judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of pleading, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) In the context of dependency proceedings, even due process violations have been held subject to the harmless beyond a reasonable doubt standard of prejudice. (See *Kobe A., supra,* 146 Cal.App.4th at pp. 1121-1123 [noncompliance with notification requirements of section 316.2]; *In re Angela C.* (2002) 99 Cal.App.4th 389, 395 [inadequate notice of the termination of parental rights hearing]; *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1386-1388 [denial of contested permanency planning hearing]; *In re Dolly D.* (1995) 41 Cal.App.4th 440, 446 [denial of right to confront and cross-examine witnesses]; *In re Laura H.* (1992) 8 Cal.App.4th 1689, 1696 [absence of parent's attorney during examination of minor in termination of parental rights proceeding]; *In re Monique T.* (1992) 2 Cal.App.4th 1372, 1377 [parent's waiver of rights].)

Here, there was no prejudice. Appellant was in fact notified of the six-month hearing but declined to attend. He was properly notified of the section 366.26 hearing and attended the hearing, during which counsel was appointed for him and the matter was continued so he could request DNA testing. The matter was continued again due to difficulties in obtaining the DNA test, but appellant failed to appear at the continued section 366.26 hearings and stopped communicating with his counsel.

Moreover, even if appellant's paternity had been established, at most his status would have been elevated to that of a biological father. He did not qualify as the presumed father because he did not attempt to marry the minors' mother, never received the minors into his home, and never openly held them out as his natural children. (See

9

Fam. Code, § 7611.) As a biological father, appellant would not have been entitled to reunification services. Under section 361.5, subdivision (a), the juvenile court had discretion to order services for the biological father only if it determined that the services would benefit the children. Appellant's lack of contact with the minors and his failure to participate in the dependency proceedings would have precluded a finding that services would benefit the minors.

"[O]ur duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument. Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) Appellant's failure to demonstrate prejudice is dispositive.

## II

Appellant next contends the juvenile court erred in terminating parental rights before determining whether appellant was the biological father. He argues that while the juvenile court tried to comply with its duty under section 316.2 to determine paternity, "after roadblocks were encountered, the matter was dropped." He claims "the delay in securing the testing" was not his fault and says he tried to obtain testing before leaving the area. He notes that even his counsel, with "an obvious command of the English language and agency procedures," could not arrange for the testing.

Appellant asserts benefits to establishing paternity: the minors would have access to his medical history (see *In re B.C.* (2012) 205 Cal.App.4th 1306, 1314) and they could contact their biological father in the future if desired. If he was not determined to be the father, the minors would have that knowledge. He says the cost of establishing paternity is negligible. Noting the minors were placed in a preadoptive home for over a year where they developed a strong relationship with their adoptive family, appellant claims: "There

10

was almost no risk of harm to the children to delay termination of parental rights while the court saw to it that the mandate to determine paternity was fulfilled."

Appellant's contention is forfeited. While there were initial obstacles to obtaining testing, his counsel indicated they were not insurmountable and appellant was given a continuance so that DNA testing could proceed. There is no indication appellant made any effort to get tested after the continuance. Consistent with his behavior throughout the dependency proceedings, appellant no longer contacted counsel after the continuance even though counsel made numerous efforts to communicate with him. Appellant did not appear in the juvenile court after his initial appearance. His failure to communicate with counsel or appear at the last section 366.26 hearing forfeits his contention on appeal. (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222.)

Even if appellant's contention was not forfeited, he would still not prevail because he has not established prejudice. As we have explained, regardless of his paternity status, appellant would not have been given services and therefore he cannot establish prejudice from the failure to obtain DNA testing. Appellant implicitly concedes this point when he claims testing would not harm the minors' chance to be adopted by their prospective adoptive parents.

### III

Appellant further contends the juvenile court erred in failing to adequately advise him of his obligation to file a writ petition to preserve his right to appeal orders setting a hearing under section 366.26. (§ 366.26, subd. (*l*)(3)(A).) But because we have

11

addressed and rejected his other contentions, we need not determine whether appellant was adequately advised pursuant to section 366.26, subdivision (*l*)(3)(A).

DISPOSITION

The juvenile court's orders are affirmed.


                                                                      MAURO_____, J.


We concur:


_____NICHOLSON_____, Acting P. J.


_____ROBIE_____, J.