Filed 1/15/14  In re Rubi S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re RUBI S., et al., Persons Coming Under the Juvenile Court Law. | B248287 |
| | (Los Angeles County Super. Ct. No. CK87965) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| CANDIDO S., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Veronica S. McBeth, Judge.  Affirmed.

Frank H. Free, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Denise M. Hippach, Deputy County Counsel for Plaintiff and Respondent.

Father Candido S. (father) appeals from the partial denial of his petition to vacate dependency jurisdiction over his children and set aside the dispositional order of the juvenile court. He contends that the Department of Children and Family Services (DCFS) failed to use reasonable diligence in searching for him prior to the dispositional hearing, which deprived him of notice and an opportunity to be heard. We conclude that the juvenile court did not err in finding due diligence had been exercised. We affirm the judgment.

## BACKGROUND

In May 2011, DCFS filed a petition pursuant to Welfare and Institutions Code section 300[1] to bring Rubi S. and Carlos S. within the jurisdiction of the juvenile court.[2] The petition alleged in counts b-1 and g-1 that minors' mother, Cirila R. (mother), had been deported to Mexico, and had failed to make an appropriate plan for minors' care or to provide minors with the necessities of life. The petition alleged in counts b-2 and g-2 that father had failed to provide the necessities of life and that his whereabouts were unknown.[3]

Rubi and Carlos, both teenagers, were detained after police found Rubi in a parked car on a canyon road with a 20-year-old man under conditions suggesting sexual activity and marijuana use. Rubi told the children's social worker (CSW) that the man was her boyfriend, that they had a sexual relationship, and that they had smoked marijuana together.

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]     Rubi was originally named in the petition as Diana, but after her birth certificate was submitted, the juvenile court minutes reflected her true name. Although DCFS continued to refer to her by both names during the proceedings, we use only the corrected name, Rubi. We refer to Carlos S. as Carlos, and to the two siblings collectively as minors.

[3]     The juvenile court dismissed a fifth count which appeared to have been included in error.

Prior to detention, minors lived with their uncle's sister-in-law, Lorena S. While Carlos remained with Lorena, Rubi left to live with various families, most recently with that of a classmate. Mother was deported to Mexico two years before and minors communicated with her periodically by telephone. Father's whereabouts were unknown. Rubi knew father's name but had never met him. Carlos told the CSW that he did not know his father who he thought lived in Mexico. Carlos frequently saw his adult brother Oliver S., who helped with his support. Oliver provided mother's telephone number in Mexico, but had no information about father's whereabouts. Minors were placed in foster care and visitation was arranged for Oliver.

The next month DCFS filed a declaration setting forth its diligence in the search for father. Since mother did not know father's birth date she was unable to provide it to the DCFS investigator (DI). Without a date of birth, the DI was unable to identify father. Nevertheless, the DI made the following fruitless searches: Welfare Case Management Information System; the county jail; state and county probation and parole departments; the Probation Index; the Child Support Division; CCSAS-CSE (Child Support Automation System of Child Support Enforcement); the state and federal prison systems; Lexis-Nexis; the Postal Service; voter registration; the military; the Department of Defense Manpower Data Center; directory assistance; the DMV; the Child Abuse Central Index; and other, unnamed sources. In the jurisdiction/disposition report, the DI reported she was unable to search CLETS (the California Law Enforcement Telecommunications System) without a birth date. The DI also reported having spoken to mother who had not had any contact or communication with father in over 13 years. Father had not attempted to locate the family in that time, and mother had no information regarding his whereabouts or that of any relatives.

Mother admitted having been arrested for driving under the influence (DUI) in 2005 and deported in 2009 due to an arrest for possession of methamphetamine. Mother also admitted using methamphetamine for five months prior to her deportation but denied having a substance abuse problem or the current use of drugs. Mother left minors with a family friend, but never provided financial support. Minors later went to live with their

3

maternal uncle and his live-in girlfriend, which mother verbally authorized. Rubi and Carlos moved in with Lorena because the uncle's girlfriend was verbally abusive.

Both minors told the DI that they did not want to live with mother in Mexico; that she had not cared for them properly when she was here; that she did not always provide them with food; and that she had worked in a bar and often went drinking with friends, sometimes not returning home until the next day. Carlos admitted to experimentation with marijuana, cocaine, and alcohol, but denied current use of these substances.

On June 27, 2011, the juvenile court sustained all four counts of the petition, adjudicated minors dependents of the court, and removed minors from their parents' custody for appropriate placement. The court ordered an evaluation of mother's home, family reunification services for parents and minors, random drug tests for mother and therapy for minors. The court also ordered that father have monitored visits once he contacted DCFS. The six-month review occurred without mother's home study, which was completed too late for the December 2011 hearing.

Completed in January 2012, the home-study report of the Mexican social services agency was positive; however, sometime prior to the hearing mother telephoned the CSW to report she had reconsidered and would prefer minors remain in the United States. Mother explained that three children had recently been murdered in her area, and she believed her children would be at risk living there due to the ongoing violence of gangs and drug cartels. Mother thereafter withdrew her contest and agreed to the termination of family reunification services. On July 19, 2012, the juvenile court terminated mother's reunification services, declared foster care the appropriate permanent plan, and scheduled a permanent plan review for January 2013. The CSW reported that minors had been placed together and were doing well in their foster home.

In the meantime, minors located father after his sister had found minors on Facebook. The juvenile court appointed an attorney in September 2012 to represent father. Father claimed to have been trying to locate minors since they were very young. He said he left the family in 1999 to work in the United States, and that he had sent money for the support of minors, but lost contact with them after mother changed her

telephone number. Father found mother again in 2005, but she did not permit him contact with minors and again changed her telephone number. Father requested that minors visit him at his home in Illinois where he was living with his fiancée, a preschool teacher, in a two-bedroom home. Father said they both would love to have minors live with them. The juvenile court requested the Court Appointed Special Advocate (CASA) obtain a courtesy assessment of father's home in Illinois. CASA declined as such home visits were not available in father's area.

In October 2012, father's attorney reported that father was facing possible deportation due to a DUI arrest and driving without a license. Father had married a United States citizen who was willing to care for the children if father was deported. In December 2012 father filed a petition pursuant to section 388 (section 388 petition) seeking to set aside the jurisdictional findings as to him, the dispositional order entered June 27, 2011, and the orders entered July 19, 2012. Father also sought placement of minors with him or unmonitored visits and family reunification services. Father alleged that DCFS had not demonstrated due diligence in locating him because DCFS had records which included his age from which a year of birth could have been extrapolated. The juvenile court ordered a hearing on the petition for February 7, 2013.

In February 2013, the CSW reported that father was unable to come to California to visit minors due to his immigration status, but continued to have regular contact with them by telephone. Minors communicated with father by text message and reported that although they enjoy communicating with him and would like to visit with him, they continued to be happy in their foster home and wished to remain there until emancipation. The CSW offered that minors were doing well in their foster home.

The juvenile court found that notice to father was sufficient and granted the section 388 petition only to the extent that family reunification services be provided to father for visitation, once father's home was determined to be safe. The court ordered foster care as the permanent plan and scheduled a progress hearing for May 2013, as well as a review hearing for August 2013. Father filed a timely notice of appeal from the court's order.

5

## DISCUSSION

Father contends that the partial denial of his section 388 petition was error, and that the dispositional order must be reversed because DCFS failed to demonstrate due diligence in its search for him.

"Since the interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights [citations], the state, before depriving a parent of this interest, must afford him adequate notice and an opportunity to be heard. [Citations.]" (*In re B. G.* (1974) 11 Cal.3d 679, 688-689.) "The notice must comport with due process. [Citation.] '[D]ue process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." [Citation.]' [Citation.]" (*In re DeJohn B*. (2000) 84 Cal.App.4th 100, 106.)

Due process is satisfied where a parent cannot be located despite the exercise of "'reasonable or due diligence' [which] '"denotes a thorough, systematic investigation and inquiry conducted in good faith."' [Citation.]" (*In re Claudia* S. (2005) 131 Cal.App.4th 236, 247.) The juvenile court's determination that DCFS exercised due diligence will be upheld if supported by substantial evidence. (*In re Sarah C*. (1992) 8 Cal.App.4th 964, 974.)

Father properly raised the issue of due diligence in a section 388 petition. (See *In re Justice P*. (2004) 123 Cal.App.4th 181, 189.) Section 388 provides for a procedure to petition the juvenile court to set aside or change a prior court order on the grounds of change of circumstance or new evidence. (*In re D.B*. (2013) 217 Cal.App.4th 1080, 1089; § 388, subd. (a).) The petitioner bears the burden to prove not only the changed circumstance, but also that a modification of the court's prior orders would be in the minor's best interest. (*Ibid*.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Justice P., supra*, at p. 189; § 388, subd. (b).)

6

Here, substantial evidence supports the juvenile court's determination that DCFS's search was adequate: the DI submitted a declaration of due diligence based on searches of private, state, county, and federal databases, including county jail, state and federal prisons, probation and parole departments, child support enforcement systems, Lexis-Nexis, the Postal Service, voter registration, the military, DMV, and others. Further the DI reported not knowing father's birth date, and how she was unable to identify him without that information. The DI spoke to mother and minors, but none of them knew father's whereabouts, his birth date, or other identifying personal information. DCFS also reported that Oliver had no information about his father's whereabouts.

Father relies on *David B. v. Superior Court* (1994) 21 Cal.App.4th 1010 (*David B.*), in which notice to the father was deemed inadequate because the social service agency "failed to take the one step which patently appeared to hold the most promise of locating petitioner -- an inquiry addressed to [the United States Marines]." (*Id.* at p. 1016.) Father compares those facts to the search in this case and concludes that because DCFS knew he was a Mexican citizen, it should have made an inquiry to Immigration and Customs Enforcement (ICE) and the appropriate social services agencies in Jalisco, Mexico, where minors were born, or in Michoacán, where mother lived.

It was father's burden to show such measures would have had some chance of success. (See *In re Emily R.* (2000) 80 Cal.App.4th 1344, 1353.) *David B.* is distinguishable as there, the San Francisco social services agency had a copy of the minor's birth certificate, which included the fact that the father was in the United States Marines and despite that information, the agency did not contact the Marines in an effort to find that father. (*David B., supra*, 21 Cal.App.4th at p. 1014.) Further, approximately eight months before the agency filed its declaration, the district attorney filed an action against the father in San Francisco Superior Court seeking to recover the City's expenses for the minor's foster care; the pleading set forth the father's address, stated that his employer was the United States Marine Corps, and listed his date of birth and social security number. (*Ibid.*) The social services agency ignored this information and made

7

no effort to serve the father with notice other than an unsuccessful inquiry to the Red Cross made shortly before his parental rights were terminated. (*Ibid.*)

Here in contrast, DCFS had no birth date, social security number, address, or employer's name. As father failed to present any evidence that DCFS disregarded information which was likely to lead to his whereabouts or that an inquiry to ICE or a Mexican social services agency made without a birth date would have any possibility of success, he failed to meet his burden of proof. (See *In re Emily R., supra*, 80 Cal.App.4th at p. 1353.)

Moreover, father failed to submit any evidence suggesting that granting his section 388 petition in its entirety was in the minors' best interest. (See *In re D.B., supra*, 217 Cal.App.4th at p. 1089; § 388, subd. (b).) In fact, two months before father filed his section 388 petition, he informed DCFS that he was facing deportation proceedings after having been arrested for DUI and driving without a license. In his petition, father provided no explanation for his unlawful behavior. Although he indicated his wife would care for the children in Illinois should he be deported, father provided no information about his wife beyond stating that she was a United States citizen and preschool teacher. Father admitted he had not seen his children for 12 years, for which he blamed mother, and yet provided no information regarding his efforts to find and support minors.

We conclude that substantial evidence established that DCFS exercised reasonable diligence in trying to locate father and if the court had erred, any such error would be harmless. In the dependency context, "[i]f the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required. [Citation.]" (*In re James F.* (2008) 42 Cal.4th 901, 918 (*James F.*).) If the defect in notice amounts to a denial of due process, the error is reviewed under the harmless beyond a reasonable doubt standard. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183; see *James F., supra*, at pp. 915, 917-919.)

Judgments cannot be set aside "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) Our examination of the

8

entire record reveals no indication that the outcome of the proceedings was affected by DCFS's failure to find father earlier. The juvenile court granted the section 388 petition in part by ordering visitation and reunification services, but denied it with respect to father's request to vacate jurisdiction and place minors in his home. Even if father had been given actual notice from the beginning, the jurisdictional order would not have been affected, as it was based in part on the sustained allegations against mother, and "a jurisdictional finding good against one parent is good against both." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.)

In addition, the juvenile court could not have placed minors with father without first determining whether such placement would be detrimental to them. (See *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1244-1245; see § 361.3, subd. (a).) Such a determination is facilitated by a reunification plan and services. (*In re Monica C.* (1995) 31 Cal.App.4th 296, 303-304, 309-310.) As father's section 388 petition was granted to the extent of ordering reunification services, he obtained the outcome he sought, despite the lack of notice. (See *James F., supra*, 42 Cal.4th at p. 918.)

Father contends, however, that he suffered prejudice because the reunification services would have commenced earlier with effective notice, raising the *possibility* of earlier reunification with his children. Father points to no evidence in the record to support his contention. Instead, the record shows possible substance abuse, difficulty in obtaining a home study in Illinois, father's inability to visit minors due to his immigration status, and a general lack of information about father. On this record, we decline to assess prejudice with "'a speculative inquiry into what might have occurred in an alternate universe.' [Citation.]" (*James F., supra*, 42 Cal.4th at p. 915.) Moreover, in dependency proceedings, any harmless error analysis must be made in conformity with the "strong public interest in prompt resolution of these cases so that the children may receive loving and secure home environments as soon as reasonably possible [which]

9

'would be thwarted if the proceeding had to be redone without any showing the new proceeding would have a different outcome.'" (*Id*. at p. 918.)[4]

As the partial granting of father's petition has afforded him the possibility of reunification with minors despite the initial lack of notice, we conclude that any error would have been harmless beyond a reasonable doubt. (See *James F., supra*, 42 Cal.4th at p. 918.)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____. J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

---

[4] In this respect, "[t]he rights and protections afforded parents in a dependency proceeding are not the same as those afforded to the accused in a criminal proceeding." (*James F., supra*, 42 Cal.4th at p. 915.)