Filed 2/4/15  In re Alberto F. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ALBERTO F. et al., Persons Coming Under the Juvenile Court Law. | |
| | D065597 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Appellant, | (Super. Ct. No. J515656D-E) |
| v. | |
| RUBEN F., | |
| Defendant and Appellant; | |
| DOREEN E., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Laura Birkmeyer, Judge.  Affirmed in part; reversed in part.  Stay vacated.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant Ruben F.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Respondent Doreen E.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

William Hook, under appointment by the Court of Appeal, for Minor D.V.

Ruben F. appeals an order denying his petitions under Welfare and Institutions Code section 388[1] to vacate the jurisdictional and dispositional findings and orders of the juvenile court. He contends he was denied his due process and statutory rights to notice, including proper service under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638) (Hague Service Convention or Convention), because the San Diego County Health and Human Services Agency (Agency) did not conduct a reasonable search for him. Ruben also contends the juvenile court erred when it required him to file a petition under section 388 to challenge the alleged notice errors. We conclude that the juvenile court erred in requiring Ruben to file a section 388 petition to consider whether he received proper service under the Hague Service Convention but the error was harmless. We otherwise find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Alberto F., now 12 years old, and D.V., now eight years old, are the children of Ruben F. and Doreen E. Ruben is a Mexican citizen living in Mexico. Alberto and D.V.

---

1    Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

(together, the children) lived with their mother and several of their older half siblings in San Diego. Alberto and his older half siblings were juvenile court dependents from 2004 until 2010 because of Doreen's substance abuse problems and Ruben's physical and verbal aggression toward her. D.V. was a juvenile court dependent from her birth in 2006 until 2010.

The history of the children's first dependency proceedings is detailed in our nonpublished opinions in *In re Tatiana V.* (Mar. 13, 2008, D051007, D051276); *In re Tatiana V.* (June 2, 2009, D053584); *In re T.V.* (Oct. 5, 2009, D055144); and *In re Tatiana V.* (Mar. 16, 2011, D057624). As relevant here, during those proceedings, Ruben attained status as Alberto's presumed father and as D.V.'s biological father. He had a criminal history, including drug-related charges, and was deported in 2005. Ruben returned to the United States shortly after his deportation. He fathered D.V. but was incarcerated at the time of her birth and subsequently deported in late 2008 or early 2009. Ruben was represented by counsel during the first dependency proceedings. Doreen regained custody of the children in 2008 and the court ultimately terminated jurisdiction in 2010.

On August 24, 2011, the Agency removed the children from Doreen's care because of hazardous conditions in the home and Doreen's substance abuse problems. Doreen told the social worker Ruben was living in Mexico. He had not visited with Alberto and D.V., but had telephone contact with them. Doreen did not have his telephone number or address. Doreen said Ruben's relatives, who lived in San Diego, may have his contact

3

information. Doreen knew where the relatives lived in San Diego but did not know their names, telephone numbers or addresses.

On August 26, the Agency initiated a parent search for Ruben. The search included local, state and federal agencies. On October 5, the social worker mailed a letter to Ruben at his last known address in San Diego (C Street) advising Ruben there would be a court hearing on October 12[2] concerning his children and asking him to contact her. The social worker received a return receipt signed by Eva F. for the letter. Eva was later identified as Ruben's great-aunt.

The juvenile court took jurisdiction over the children and removed them from Doreen's custody with family reunification services. The court made no findings as to Ruben.

Six months later, in April 2012, the social worker submitted parent search referrals for Ruben to its International Liaison office and to its domestic search team. International Liaison social worker Francisco Llerandi contacted the Mexican Consulate, the Attorney General's Office, the Mexican social services agency and the Census Office of Mexico. None of those agencies had any record of Ruben's whereabouts. On April 26, the social worker mailed a certified letter to Ruben at C Street advising him he had a right to attend a court hearing on May 15 for his children and requesting that Ruben

---

[2] The jurisdiction hearing was initially calendared for October 12, 2011, but was heard on November 17, 2011.

contact her if he did not want to be involved with the case.[3]  Another letter was sent to Ruben at C Street on May 8.[4]  The social worker asked Alberto if he had talked with Ruben recently.  Alberto denied any contact, saying Ruben did not know his new telephone number and he did not have Ruben's telephone number.

In February 2013, the Agency recommended placing the children with Doreen with family maintenance services.  Because Doreen tested positive for amphetamine and methamphetamine in March, the Agency changed its recommendation to termination of reunification services and asked the juvenile court to set a section 366.26 hearing.

The Agency submitted another parent search request for Ruben in February 2013.  The results indicated Ruben received mail at C Street.  The social worker located telephone numbers for six of Ruben's friends and relatives and telephoned them, including Norma F., Ruben's aunt.  A man who answered Norma's telephone said the social worker had a wrong number.  Ruben's grandfather said he did not know Ruben's whereabouts.  Another relative said he believed that Ruben had been deported to Mexico.

In May and June, a protective services assistant went to C Street and left a business card with a request for a return call.  In July, on her third visit to C Street, the assistant spoke to Ruben's aunt Norma.  She did not have Ruben's address but provided his telephone number to the assistant, who in turn gave Ruben's telephone number to

---

[3]    The record does not indicate the Agency received a return receipt for this letter.

[4]    The record does not contain a copy of this letter.

social worker Llerandi.  Llerandi telephoned Ruben, who was living in Rosarito, B.C., Mexico, and obtained his address.

At Llerandi's request, a paternal relative delivered a copy of the notices for the children's section 366.26 hearing to Ruben.  Ruben signed the documents on July 19.  He told Llerandi he did not know his children's cases were nearing the end.  He said Doreen never contacted him and he had many family members who could care for Alberto and D.V.  Ruben requested counsel be appointed to represent him.

Social worker Cathy Andrews sent an Attorney Appointment Request to Ruben by mail to his address in Rosarito.  The Agency received a signed waiver and proof of service from Ruben the following week.

In August, the Agency asked the juvenile court to continue the section 366.26 hearing for 180 days to allow it to identify an appropriate permanent placement for Alberto, D.V. and their older half sister, Tatiana, as a sibling group.  On October 23, Ruben's counsel filed a motion to vacate the 2011 jurisdictional findings and orders the juvenile court had made on behalf of Alberto and D.V.  He asserted he did not receive adequate notice of the children's dependency proceedings.  Ruben argued the Agency failed to search for him in Mexico; did not attempt to contact Eva, who had signed a return receipt for a letter mailed to Ruben's last known address on C Street before the jurisdiction hearing; did not serve Ruben with the children's section 300 petitions; did not provide adequate notice of the section 366.26 hearing; and did not comply with the Hague Service Convention.

6

Over Ruben's objections, the juvenile court required him to file a section 388 petition before it would consider whether he received adequate notice of the proceedings. The court said Ruben had the burden of showing that vacating the jurisdiction hearing was in the children's best interests.

Ruben filed section 388 petitions alleging he did not receive proper notice of the children's dependency proceedings and that it was in the children's best interests to vacate the jurisdictional and dispositional findings to obtain a dependency adjudication based upon all material facts and circumstances, and the participation of all interested parties entitled to notice.

D.V. and Alberto supported Ruben's petitions, stating they wanted to maintain their relationships with their father.

At the evidentiary hearing on Ruben's section 388 petitions, the juvenile court admitted the Agency's report detailing its search efforts for Ruben, as described above. The Agency acknowledged it did not conduct an international search for Ruben before the jurisdiction and disposition hearing. However, the Agency noted it searched for Ruben in Mexico in April, June and October 2012, contacted Mexican authorities and made a media announcement in Mexico. None of those efforts were successful in locating Ruben.

Social worker Andrews, who was assigned to the children's cases after the juvenile court referred the matter for a section 366.26 hearing, testified about her efforts to locate Ruben. Andrews asked an assistant to visit the C Street address because it was the only address the Agency ever had on file for Ruben and someone with the same last name as

his lived there. On her third visit, the assistant obtained Ruben's telephone number from his aunt Norma. A short time later, social worker Llerandi asked a paternal relative to serve Ruben with notice of the section 366.26 hearing.

Ruben's aunt Norma testified she had lived at C Street for eight years. Ruben's great-aunt Eva also lived at that address. Ruben was deported to Mexico approximately five years earlier and Norma had been in contact with him the entire time. Norma said Ruben did not have a permanent address in Mexico, landline or a permanent cell phone number and, for a while, he had been in a rehabilitation center in Tijuana, B.C. The aunt testified Ruben also stayed at his girlfriend's house or with friends in Tijuana or Rosarito. Although Ruben moved frequently, he always remained in contact with Norma, who brought food, money and clothing to him every week or two. In October 2011, Norma received a letter addressed to Ruben from the Agency. She acknowledged she took all Ruben's mail to him.

The juvenile court rejected Ruben's argument the search efforts were unreasonable because the Agency did not immediately search for him in Mexico. The court noted the record showed that in the previous dependency case, Ruben had returned to the United States after being deported in 2005, and thus the domestic search was reasonably calculated to lead to information about his current whereabouts. The juvenile court said the more important issue was whether the modification requested was in the children's best interests. The court found that Ruben had not met this burden, noting that even after he talked with the social worker and learned of his children's circumstances, he made no effort to contact the children. The juvenile court found that the Agency's search efforts

8

were reasonable and denied Ruben's section 388 petitions.  The court further found that Ruben had actual notice of the children's dependency proceedings.

The juvenile court directed the Agency to comply with the Hague Service Convention for notice of the section 366.26 hearing as expeditiously as possible, and continued the section 366.26 hearing for approximately two months.

On March 27, 2014, the date set for the section 366.26 hearing, the Agency asked the court to reconsider its order to comply with the Hague Service Convention and find that service under the Convention was not required.  The court directed the Agency to file a section 388 petition.

In support of its section 388 petition, the Agency reported it had tried to comply with the order to serve Ruben in compliance with the Hague Service Convention by researching the law, consulting the Los Angeles County Counsel and the United States Department of Justice (DOJ), and implementing a procedure to comply with the Convention's requirements.  According to the DOJ, the Convention was not commonly applied to juvenile dependency matters.  Service through Mexican authorities could take from four months to more than a year.  The Agency stated it had prepared the court documents required by Mexico under the Convention and had mailed them to the California Secretary of State.  Once the documents were returned, the Agency would then forward the documents to the Mexican Ministry of Foreign Affairs.  The Agency estimated it would take seven more months to serve Ruben in accordance with the Hague Service Convention.

Minor's counsel advised the juvenile court Alberto now wished to be adopted by his foster care parents. D.V., who was placed with her maternal grandmother, did not change her position about maintaining her relationship with Ruben.

On April 11, 2014, the juvenile court found that the children's best interests required compliance with the Hague Service Convention and denied the Agency's section 388 petition.[5] The juvenile court continued the section 366.26 hearing until December 9, 2014. This court, on its own motion, stayed the section 366.26 hearing until further order.[6]

---

[5] The Agency filed a notice of appeal of the juvenile court's order to comply with the Hague Service Convention but did not pursue the appeal.

[6] This court directed the parties to file supplemental simultaneous letter briefs addressing whether "notice to a parent who is a Mexican [resident] of his or her child's juvenile dependency proceeding under the Hague Service Convention (T.I.A.S. No. 6638 (U.S. Treaty)) [is] required in view of the Vienna Convention on Consular Relations (T.I.A.S. No. 6820 (U.S. Treaty) and the Memorandum of Understanding Between the Consulate General of Mexico in San Diego California and the County of San Diego Health and Human Services Agency, State of California of the United States of America Regarding Consular Assistance in Cases of Custody Involving Mexican Minors?"
Based on these supplemental briefs and our own research, we have determined there may be merit to the view that compliance with the Vienna Convention on Consular Relations and the Memorandum of Understanding Between the Consulate General of Mexico in San Diego may comport with, or replace, requirements for service under the Hague Service Convention. (See, generally, *In re Jennifer O*. (2010) 184 Cal.App.4th 539, 547 [questioning whether the Hague Service Convention applies in dependency proceedings].) However, the record in this case is not adequate to resolve the issue. Accordingly, nothing in this opinion is to be construed as preventing the Agency from clarifying the requirements imposed by Mexico for service of notice of a juvenile dependency proceeding to a parent who is living in Mexico, particularly in a border region. (See, e.g., Office of the Assistant Secretary for Planning and Evaluation et al., ASPE Issue Brief: Emerging Child Welfare Practice Regarding Immigrant Children in Foster Care: Collaborations with Foreign Consulates (Dec. 2013) p. 1.)

DISCUSSION

A

THE PARTIES' CONTENTIONS

Reuben contends the jurisdiction and disposition hearings are void for lack of personal jurisdiction over him. He argues the Agency deprived him of his right to seek custody or reunify with his children by failing to conduct a reasonable search for him. He asserts he did not receive proper service under the Hague Service Convention or California statutory law, which requires that a parent be served with a copy of his child's section 300 petition and a statement of rights. (§ 290.2.) Ruben contends there is not substantial evidence to support the juvenile court's findings the Agency exercised due diligence in searching for him and that he had actual notice of the dependency proceedings. He maintains that the juvenile court erred when it required him to file a section 388 petition to challenge the alleged notice errors under state law and the Hague Service Convention. Doreen and D.V. join with Ruben's arguments.

The Agency argues the juvenile court did not err in finding that service under the Hague Service Convention was not required because Ruben's address was unknown. It contends the juvenile court did not abuse its discretion in finding the Agency used reasonable diligence to locate Ruben and that he had actual notice of the proceedings. The Agency asserts the use of a section 388 petition is the proper means by which to challenge jurisdiction based on an alleged notice error. Finally, the Agency argues Ruben's due process rights were protected by the safeguards that are inherent in the juvenile court's review of a section 388 petition.

11

B

APPLICABLE LEGAL PRINCIPLES

1.    *Due Process*

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314; *In re Claudia S.* (2005) 131 Cal.App.4th 236, 247 (*Claudia S.*).) "Notice is both a constitutional and statutory imperative. In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend." (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114.)

When a section 300 petition is filed, the clerk of the juvenile court is required to issue notice by attaching a copy of the petition and causing it to be served on the parents. (§ 290.2.) When a parent is not present at the detention hearing, the parent must receive notice of the jurisdiction and disposition hearings by personal service or certified mail, return receipt requested. (§ 291, subd. (e)(1); *In re Alyssa F.* (2003) 112 Cal.App.4th 846, 853 (*Alyssa F.*).)

If the whereabouts of a parent is unknown, the child welfare agency must act with diligence to locate a missing parent. Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith. (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 (*David B.*).) Where the party conducting the investigation ignores the most likely means of finding the parent, the service is invalid even if the

12

affidavit of diligence is sufficient. (*Ibid*.) However, "[d]ue process notice requirements are deemed satisfied where a parent cannot be located despite a reasonable search effort and the failure to give actual notice will not render the proceedings invalid." (*Claudia S.*, *supra*, 131 Cal.App.4th at p. 247.)

Unless there is no attempt to serve notice on a parent, in which case the error is reversible per se, notice errors do not automatically require reversal but are reviewed to determine whether the error is harmless beyond a reasonable doubt. (*In re J.H.* (2007) 158 Cal.App.4th 174, 182-183.) A parent claiming a lack of due process notice of a juvenile dependency petition can challenge the judgment by filing a section 388 petition in the same proceeding. (*Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 481 [a judgment void for lack of due process notice is subject to attack at any time in a proceeding initiated for that purpose].) Alternatively, a parent can apply to "the inherent power of the court which exists independent of any statute to set aside judgments void for want of jurisdiction over the person." (*David B.*, *supra*, 21 Cal.App.4th at pp. 1018, 1019-1020.)

2.    *The Hague Service Convention*

Where a parent is a resident of another country that is a signatory to the Hague Service Convention, the petition and notice of jurisdiction and disposition hearings must be served on the parent pursuant to the Convention's requirements.[7] (*In re Jennifer O.,*

---

7    "The Convention deals primarily with the *transmission of documents from one State to another State*; the Convention does *not* address or comprise substantive rules relating to *actual service of process*." (Practical Handbook on the Operation of the

13

*supra*, 184 Cal.App.4th at p. 547.) The Hague Service Convention applies when the forum state's internal law requires transmittal of documents as a necessary part of service of process. (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 700 (*Volkswagenwerk*); see §§ 290.2, 291 [requiring a copy of the petition to be served on the parents].) The term "[s]ervice of process" refers to "a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." (*Volkswagenwerk,* at p. 700).)

"The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. 20 U.S.T. 362, T.I.A.S. 6638, Art. 2. Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. Art. 5. The central authority must then provide a certificate of service that conforms to a specified model. Art. 6. A state also may consent to methods of service within its boundaries other than a request to its central authority. Arts. 8-11, 19. The remaining provisions of the Convention that are relevant here limit the circumstances in which a default judgment may be entered against a defendant who had to be served abroad and did not appear, and provide some means for relief from such a judgment. Arts. 15, 16." (*Volkswagenwerk*, *supra*, 486 U.S. at pp. 698-699.)

---

Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (3d ed. 2006) p. XXV (Practical Handbook).)

14

In addition to service through a central authority, the Hague Service Convention permits service directly through its diplomatic or consular agents, or by mail, unless a state objects. (Convention, arts. 8, 9; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 1005, p. 1222.) Mexico has objected to the use of those channels for service on its own citizens. (Modificanciones a las Declaraciones del Gobierno de las Estados Unidos Mexicanos al Convenio sobre la Notificacíon o Traslado en el Estranjero de Documental Judicales o Extrajudiciales en Mataeria Civil o Comercial, adoptado en La Haya, el 15 de noviembre de 1965, par. V (Declaration 2011); see Campbell, *No Sirve Continued: Mexico Modifies Its Declarations to the Hague Service Convention* (2011) 20 Minn. J. Intl. L. 1, 7.) Service on a Mexican citizen resident can only be accomplished through the Mexican Central Authority. (*In re Vanessa Q.* (2010) 187 Cal.App.4th 128, 134-135.)

Where the Hague Service Convention applies to a parent, the failure to properly serve that parent "renders all subsequent proceedings void as to that person." (*Alyssa F.*, *supra*, 112 Cal.App.4th at p. 852.) Defective service of the petition and notice to appear is not cured by actual notice of the action.[8] (*Ibid.*; *Floveyor Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 794 [failure to comply with the Convention renders

---

[8] "Nonetheless, defective service is not fatal to personal jurisdiction if the defendant consents to jurisdiction over him or her by making a general appearance in the action." (*In re Vanessa Q.*, *supra*, 187 Cal.App.4th at p. 135.) For this reason, where the Hague Service Convention applies, the better practice is, in addition to complying with the Convention, to attempt notice to the parent through other means, such as mail or through a relative and by notifying the Mexican Consulate, with the expectation that in the majority of cases, a parent who is concerned about his or her child's well-being will want to promptly appear and participate in his or her child's dependency proceeding.

15

service void, even if defendant has actual notice of the lawsuit].)  The burden is on the plaintiff to show that service of process on the defendant "comported with the Hague Convention regarding service on an individual in a foreign country, or a proper basis for why the Hague Convention did not apply." (*Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1160 (*Lebel*).)

The Hague Service Convention does not apply where the address of the person to be served is not known.  (Convention, art. 1; *Lebel, supra*, 210 Cal.App.4th at p. 1161.)  A plaintiff is required to exercise reasonable diligence to ascertain a defendant's whereabouts.  (*Lebel*, at pp. 1161-1162.)  "No bright-line rule or singular test can be articulated identifying or quantifying what good faith efforts would amount to a proper showing of reasonable diligence" in ascertaining the whereabouts of a defendant for purposes of service in compliance with the Hague Service Convention.  (*Id*. at p. 1162.) "Such a determination necessarily would have to be made on a case-by-case basis—a factual inquiry appropriately left to resolution in the trial court."[9]  (*Ibid.*)

_____

9    For the purposes of this appeal, we will assume, without deciding, that " 'reasonable diligence' " to locate a missing defendant under the Hague Service Convention is the equivalent of the requirement the Agency exercise " 'reasonable diligence' " to search for a parent whose whereabouts are unknown.  (See *David B., supra,* 21 Cal.App.4th at p. 1016.)

C

## THE JUVENILE COURT ERRED IN REQUIRING RUBEN TO FILE A SECTION 388 PETITION TO CHALLENGE AN ALLEGED NOTICE ERROR UNDER THE HAGUE SERVICE CONVENTION

A parent may use a section 388 petition to raise a due process notice error. (*Ansley v. Superior Court*, *supra*, 185 Cal.App.3d at p. 481; *David B.*, *supra*, 21 Cal.App.4th at p. 1018.) Although provisions of the Code of Civil Procedure relating to the setting aside of default judgments do not apply to dependency proceedings, a parent may also bring a motion to vacate a void judgment pursuant to the court's inherent power.[10] (*David B.*, at pp. 1018-1019.)

Under section 388, the burden is on the parent to show changed circumstances or new evidence, and that the best interests of the child will be promoted by a modification of the prior order. (§ 388.) " '[S]ection 388 contemplates that a petition make a prima facie showing of both elements to trigger an evidentiary hearing on the petition.' [Citation.] The statutory language 'makes clear that the hearing is only to be held if it appears that the best interests of the child may be promoted by the proposed change of order.' " (*In re Justice P.* (2004) 123 Cal.App.4th 181, 191.)

It is not appropriate to deny a parent a hearing under section 388 where the parent states a prima facie case that his constitutional right to notice has been violated. The right to notice is "[a]n elementary and fundamental requirement of due process in any

---

10　The juvenile court has no authority to set aside an order for lack of personal jurisdiction over a parent after parental rights have been terminated. (*David B., supra,* 21 Cal.App.4th at pp. 1019-1020.) We need not reach the issue whether this holding is abrogated by the terms of the Hague Service Convention.

17

proceeding which is to be accorded finality . . . ." (*Mullane v. Central Hanover Bank & Trust Co.*, *supra*, 339 U.S. at p. 314.)  In addition, the juvenile court has "strong interests in receiving all relevant information about the child's circumstances and avoiding an erroneous decision based on untested evidence." (*In re J.F.* (2011) 196 Cal.App.4th 321, 335.)  However, the juvenile court "must look to the totality of a child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.)  A modification of a jurisdictional or dispositional order may implicate the best interests of the child, particularly where intervening review hearings have occurred, and it does not violate due process to require a parent to show that *the modification sought* is in the best interests of the child in view of the circumstances of the child and the posture of the dependency proceedings.  Thus, where a parent challenges notice on a due process ground, the court does not err in requiring the parent to file a section 388 petition where the modification sought implicates the child's best interests.

However, where, as here, the parent challenges whether the court has personal jurisdiction over him because of an alleged failure to comply with the Hague Service Convention, a different consideration applies.  Whereas the burden of proof in a section 388 petition is on the parent, the Hague Service Convention requires the *plaintiff* to show service of process on the defendant comported with its provisions, or a proper basis for why the Convention did not apply.  (*Lebel*, *supra*, 210 Cal.App.4th at p. 1160.)  State courts must apply the provisions of a treaty as a matter of federal law.  (Cf. *Sanchez-Llamas v. Oregon* (2006) 548 U.S. 331, 346-347 [where a treaty provides for a particular judicial remedy, courts, including state courts, must apply the remedy as a requirement of

18

federal law].)  Because it is the Agency's burden, as plaintiff, a parent cannot be required to bear the burden of proof to establish the error or condition a hearing on a prima facie showing of the child's best interests.[11]  Under the Hague Service Convention, the failure to properly serve the parent "renders all subsequent proceedings void *as to that person*."[12]  (*Alyssa F.*, *supra*, 112 Cal.App.4th at p. 852, italics added.)  Thus the juvenile court erred when it required Ruben to file a section 388 petition to show he did not receive service as mandated by treaty.

However, the finding of error does not mandate reversal.[13]  (See *People v. Flood* (1998) 18 Cal.4th 470, 493 [per se reversal reserved for structural flaws such as total deprivation of the right to counsel, biased judge, unlawful racial exclusion of jury members and denial of right of self-representation].)  Therefore, to show prejudice, appellant must show there is a reasonable probability the court would have reached a more favorable result in the absence of the error.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  As we explain, Ruben does not meet that standard because the record shows

---

[11]    The Agency contends that under article 12 of the Hague Service Convention, the juvenile court is not required to deviate from section 388 when seeking to set aside prior juvenile court orders.  However, article 12 concerns costs of service.  It does not address procedural issues.

[12]    Thus, had Ruben established a notice violation, he would have been entitled to a hearing to attain status as D.V.'s presumed father, request custody of the children under section 361.2, and respond to the Agency's recommendation he not receive reunification services.  (§ 361.5, subds. (a), (c); see *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 [describing when a parent can challenge jurisdictional findings based on the conduct of the other parent].)

[13]    Ruben was not denied a hearing on the merits of his petitions.

that had the Agency been held to its burden of proof, it would have clearly shown that it

conducted a reasonable search for Ruben before the jurisdiction and disposition hearings

and his address was unknown; therefore, the Hague Service Convention did not apply.

D

THE COURT DID NOT ERR WHEN IT DETERMINED THAT THE AGENCY'S
EFFORTS TO LOCATE RUBEN WERE REASONABLE;
RUBEN WAS NOT DENIED DUE PROCESS OF LAW[14]

Ruben contends the Agency did not conduct a reasonable search for him because

they did not look for him in Mexico until after the jurisdiction and disposition hearings,

and did not contact his relatives until July 2013.

We review a due process notice issue as a mixed question of law and fact in which

we defer to the juvenile court's findings of historical fact under the substantial evidence

standard of review and determine a due process violation under the de novo standard of

review.  (Cf. *People v. Alvarez* (1996) 14 Cal.4th 155, 182 [review of search and seizure

issue]; see *In re J.H., supra*, 158 Cal.App.4th at p. 183 [constitutional issues reviewed de

novo].)

The record contains substantial evidence to support the juvenile court's factual

findings concerning the Agency's efforts to locate Ruben and that Ruben had actual

---

14     For purposes of this opinion, we assume, without deciding, that a notice violation
under the Hague Service Convention violates due process.  (See *Shoei Kako Co. v.
Superior Court* (1973) 33 Cal.App.3d 808, 820 ["Article 15 of the convention is the
equivalent of our national due process concept, and it was so recognized in the Senate."],
citing Cong. Rec., Senate proceedings (Apr. 13, 1967) p. 404.)  Article 15 requires the
judge not to give judgment until it has been established that the document was served in
accordance with the formal requirements of the requesting state in sufficient time to
enable the defendant to defend.  (Practical Handbook, *supra*, at p. 97.)

20

notice of his children's dependency proceedings. The record shows that Ruben was living or incarcerated in San Diego from at least 2002 to March 2005, when he was deported to Mexico. He returned to the United States shortly after he was deported. Ruben's last known address was on C Street and someone with the same last name still lived at that address. Although Doreen told the social worker Ruben was living in Mexico when the children were detained in August 2011, Doreen did not have his address or telephone number, and she did not know the names or addresses of his relatives. The social worker submitted a standard parent search request for Ruben before the detention hearing.

We do not agree with Ruben's contention that the Agency's action in submitting a parent search request to local and domestic agencies was unreasonable. The record permits the reasonable inference that after his deportation, Ruben returned to the United States no later than October 2005.[15] The record also shows that Ruben was deported sometime between November 2008 and May 2009 and he had a history of crossing the United States-Mexico border and living in San Diego. Under these circumstances, it was reasonable for the Agency to submit a domestic parent search referral to try to obtain information that would lead to the discovery of Ruben's whereabouts. That effort, in fact, resulted in the delivery of a letter from the Agency to Ruben by Ruben's aunt Norma, who saw Ruben every week or every other week and delivered Ruben's mail to him in

---

15    D.V. was born in July 2006. During this time, Doreen's other children were dependents of the juvenile court. Doreen was living in San Diego and engaging in reunification services.

Mexico. The jurisdiction and disposition hearing was held approximately six weeks after the date of the Agency's letter. Ruben did not respond to the social worker's request to contact her about his children. Ruben's later comment that he did not know the children's dependency cases were "coming to an end" indicates he knew about the proceedings, and supports the court's finding that Ruben had actual notice of the proceedings.

In addition, we are not persuaded by Ruben's argument the Agency's later success in locating Ruben through his relatives shows that the Agency's initial search for him was deficient. The social worker telephoned several of Ruben's relatives, with no success. The assistant went to the C Street address *three times* before she found someone who would respond to her inquiries. Instead of supporting Ruben's argument, the Agency's later success shows that it made substantial efforts to locate Ruben, despite the lack of cooperation from his relatives. Ruben does not show that had the assistant visited the C Street address prior to the jurisdiction and disposition hearing, the Agency would have discovered his whereabouts.

Similarly, we are not persuaded by Ruben's argument the Agency's search for him was unreasonable because it did not search for him in Mexico prior to the jurisdiction and disposition hearing. The Agency's unsuccessful international search efforts in April, June and October 2012 support a reasonable inference that an international search in September and October 2011 would not have resulted in the discovery of Ruben's whereabouts. The searches were unsuccessful in locating Ruben, which was not surprising in view of his aunt's testimony that he did not have a permanent address or telephone and stayed with other people in various locations in Baja California. Thus, to

22

the extent the Agency should have initiated an international search for Ruben before the jurisdiction and disposition hearing, any error is harmless. (*Justice P., supra*, 123 Cal.App.4th at p. 193 [unless there is no attempt to serve notice on a parent, in which case the error is reversible per se, due process violations in dependency proceedings are subject to the "harmless beyond a reasonable doubt" standard of prejudice].)

We conclude that the Agency conducted a reasonable search to locate Ruben and the inquiry was made in good faith. (*David B.*, *supra*, 21 Cal.App.4th at p. 1016.) Due process notice requirements are deemed satisfied where a parent cannot be located despite a reasonable search effort and the failure to give actual notice will not render the proceedings invalid." (*Claudia S.*, *supra*, 131 Cal.App.4th at p. 247.) In addition, the Hague Service Convention does not apply where the address of the person to be served is not known, a parent's address is unknown and the plaintiff has exercised reasonable diligence to ascertain that person's whereabouts. (*Lebel*, *supra*, 210 Cal.App.4th at pp. 1161-1162.)

## DISPOSITION

The juvenile court's ruling that a party must file a section 388 petition to challenge an alleged notice error under the Hague Service Convention is reversed.  In all other respects, the findings and orders of the juvenile court are affirmed.  The stay issued November 20, 2014, of the section 366.26 hearing is vacated.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

24